959 So.2d 308 (2007)
Theron D. HOWARD, Jr., individually and as guardian of Elizabeth Howard, Anthony Howard, and Thomas Howard, Appellants,
v.
Steven Vern RISCH, JR Distributors, and Michael Workman, Appellees.
No. 2D06-2572.
District Court of Appeal of Florida, Second District.
May 11, 2007.
Rehearing Denied July 6, 2007.
*309 James R. Wilson of Johnson, Auvil, Brock & Wilson, P.A., Dade City, for Appellant.
Christopher B. Hopkins and Allison S. Miller-Bernstein of Cole, Scott & Kissane, P.A., West Palm Beach, for Appellees Steven Vern Risch and JR Distributors.
Beth M. Gordon of Parrillo, Weiss & O'Halloran, Boca Raton, for Appellee Michael Workman.
ALTENBERND, Judge.
Theron D. Howard, Jr., individually and for his children, appeals an order dismissing an automobile negligence action involving two separate accidents. The trial court dismissed the lawsuit as a sanction, stating that it had found by clear and convincing evidence that Mr. Howard had "evidenced a deliberate and purposeful attempt to deceive the Court." We reverse. The minimal amount of admissible evidence before the court did not authorize the court to dismiss this action as a sanction.
On October 28, 2003, Mr. Howard was driving his car in Zephyrhills, Florida, when he was struck by a car owned by JR Distributors and operated by Steven Vern Risch. Mr. Howard claims that Mr. Risch changed lanes or turned left from the right lane of a one-way street, running into his right front fender. Although the damage to his car was not extensive, his wife was taken to the emergency room from the *310 scene of the accident and he obtained treatment at the emergency room a few hours later. He claimed that the accident caused him to have pain in his lower back, in his right leg, in his neck, and in his arm.
A few weeks later, on December 6, 2003, Mr. Howard was again driving his car when Michael Workman allegedly failed to stop for a stop sign and ran into his car. Mr. Howard claimed that this accident aggravated his injuries from the first accident.
The record does not contain much medical evidence, but it appears that Mr. Howard has had surgery that he maintains is related to these accidents. Mr. Howard amended his complaint to include claims on behalf of his children, alleging that Mr. Howard's significant permanent injuries resulted in a permanent total disability for which the children are entitled to a monetary recovery. See § 768.0415, Fla. Stat. (2003).
Mr. Howard filed his lawsuit in May 2005. The defendants' served standard interrogatories on him, which he answered in October 2005. His deposition was taken in January 2006. Thereafter, JR Distributors and Mr. Risch sought dismissal of the lawsuit, maintaining that Mr. Howard "perpetrat[ed] a fraud upon the court" by failing to disclose his criminal history in this discovery and by failing to disclose fully his medical history. Mr. Howard filed an affidavit in opposition to the motion, averring that any omission on his part was not intended to defraud the parties or the court and was merely a result of poor memory or confusion.
The trial court held a hearing at which JR Distributors and Mr. Risch presented the answers to interrogatories, the deposition transcript, and some records they received in discovery that appeared to contradict some of the answers Mr. Howard gave. Mr. Workman's counsel appeared at the hearing and sought to join in the motion. No further evidence was presented. Nevertheless, the trial court dismissed the lawsuit, concluding that Mr. Howard's responses to discovery constituted a fraud upon the court.
Mr. Howard appeals the order dismissing his action, arguing that the limited evidence before the court did not permit the dismissal of his claim on the grounds of fraud. We agree.
There is no question that a trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a plaintiff has perpetrated a fraud on the court. See Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998) (citing Kornblum v. Schneider, 609 So.2d 138, 139 (Fla. 4th DCA 1992)). Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances. Id. (citing Bird v. Hardrives of Delray, Inc., 644 So.2d 89, 90 (Fla. 4th DCA 1994)). When examining an order dismissing a lawsuit for fraud during the discovery process, this court applies an abuse of discretion standard that is somewhat "narrowed." See Jacob v. Henderson, 840 So.2d 1167, 1168-69 (Fla. 2d DCA 2003).
In Jacob, 840 So.2d at 1169, this court adopted the approach set forth by the Fifth District in Cox, 706 So.2d 43, to assess whether dismissal is merited based upon evidence of a plaintiff's fraud:
The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude *311 v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989). When reviewing a case for fraud, the court should "consider the proper mix of factors" and carefully balance a policy favoring adjudication on the merits with competing policies to maintain the integrity of the judicial system. Id. at 1117-18. Because "dismissal sounds the `death knell of the lawsuit,' courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious." Id. at 1118.
Cox, 706 So.2d at 46; see also Laschke v. R.J. Reynolds Tobacco Co., 872 So.2d 344, 346 (Fla. 2d DCA 2004). Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim. See Ruiz v. City of Orlando, 859 So.2d 574, 576 (Fla. 5th DCA 2003).
In light of these principles, we examine the two areas in which the defendants alleged Mr. Howard's discovery responses amounted to fraud: The responses regarding Mr. Howard's criminal history and the responses regarding his past injuries or accidents.

I. THE CRIMINAL HISTORY
Mr. Howard was born in June 1970. When he was fifteen or sixteen years old, he had a sexual relationship with a girl under the age of sixteen. This apparently occurred in 1986. He was not charged for these events until 1989, when he was nineteen years old. In November 1989, he pleaded nolo contendere to lewd and lascivious conduct and two counts of handling and fondling. The trial court withheld adjudication and placed him on two years' community control, followed by one-year of probation.
In January 1992, Mr. Howard was charged with a violation of his probation because he had sex with a girl older than sixteen, but younger than eighteen. New charges were also filed for this event, but Mr. Howard was found not guilty by a jury in the new case. Nevertheless, the trial court found Mr. Howard had violated the terms of his probation in the earlier case. The court entered an adjudication of guilt and continued Mr. Howard's probation for one more year. The trial judge who entered the adjudication in April 1993 happens to be the same trial judge who entered the order on appeal in the current case.
In the interrogatories submitted to Mr. Howard in this case, he was asked: "Have you ever been convicted of a crime, other than any juvenile adjudication, which under the law under which you were convicted was punishable by death or imprisonment in excess of 1 year, or that involved dishonesty or a false statement regardless of the punishment?"[1] He answered this question: "No." During his deposition a few months later, the defendants did not ask him any additional questions that might have caused him to clarify his answer.
When JR Distributors and Mr. Risch moved to dismiss this lawsuit for failure to accurately answer the interrogatory, they filed an unsworn motion that was supported by a certified copy of the judgment adjudicating Mr. Howard guilty *312 of three second-degree felonies in April 1993 and the sentence that placed him on one year of probation. The record indicated that the defendants also filed another collection of criminal records in addition to the judgment, but when the record was transmitted to this court it did not contain this information. The record has now been supplemented with a filing dated December 29, 2006, a date subsequent to the oral argument in this appeal. For purposes of this appeal, we are assuming that the trial judge had this information. It contains photocopies of a criminal file and supports the facts explained in this opinion.
In the affidavit Mr. Howard filed in response to the motion to dismiss, he denied that he intentionally answered the interrogatories incorrectly or inaccurately. Mr. Howard has an eighth-grade education. He explained that when he answered the interrogatories he recalled being arrested when he was "really young" and that he thought he was not convicted. Given the facts as described above, it is entirely possible that Mr. Howard's affidavit is accurate. He also filed certified copies of the not guilty verdict and judgment of acquittal in the second case.
As stated above, the trial court did not conduct an evidentiary hearing on this portion of the motion to dismiss, but it found "by clear and convincing evidence" that Mr. Howard evidenced a deliberate and purposeful attempt to deceive the court by failing to disclose the three above-described convictions. We would observe, however, that the only "evidence" before the trial court appears to have been the certified copy of the 1993 judgment and sentence and Mr. Howard's affidavit explaining why he thought he was being honest when he answered the standard interrogatory. JR Distributors and Mr. Risch filed documents and pleadings, but nothing in the nature of admissible evidence, to prove fraud.
Before a trial court can make a discretionary decision regarding the dismissal of a case for fraud, it must have an evidentiary basis to make that decision. Here, the trial court had no evidence to support findings of fact based upon the heightened clear-and-convincing-evidence standard regarding the allegations of fraud.
Even if JR Distributors and Mr. Risch had presented proper admissible evidence to support a finding that Mr. Howard intentionally misrepresented his criminal history in his answer to the standard interrogatory, that proof may not warrant this severe sanction. Based upon the current record, Mr. Howard's criminal record does not appear to be directly relevant to any issue concerning the possible negligence of Mr. Risch or Mr. Workman in the operation of their vehicles or the possible comparative negligence of Mr. Howard. There is nothing to suggest that it would be relevant to any medical issue. It is at least plausible that prior convictions could be relevant in assessing a claim for lost earning capacity,[2] but it is unclear at this time what role such a claim will play in this case.
When this case was dismissed, Mr. Howard had a pending motion to prevent the admission of these criminal records in evidence. Criminal records are sometimes admissible for the purpose of impeachment. See § 90.610(1), Fla. Stat. (2003). At this point, however, it is unclear whether any impeachment of Mr. Howard's testimony at trial will be necessary or appropriate. In a civil case, such evidence is inadmissible "if it is so remote in time as to have no bearing on the present character *313 of the witness." § 90.610(1)(a).[3] Although the fact a witness or party was convicted of a crime may be relevant and admissible for impeachment purposes, the nature of the crime or any details about the crime are generally inadmissible. Reeser v. Boats Unlimited, Inc., 432 So.2d 1346, 1349 (Fla. 4th DCA 1983). Thus, if Mr. Howard testified truthfully at trial that he had previously been convicted of three felonies, it appears the defendants could pursue the matter no further.
Given the very limited relevance of these convictions to this personal injury action, JR Distributors and Mr. Risch did not establish an entitlement to a dismissal of this lawsuit under the standard announced in Jacob and Cox. Even if we assumed that Mr. Howard intentionally concealed these convictions (an assumption not supported by the record), the defendants have not established that this evidence is material to any issue that would be presented to a jury at trial such that its concealment supports the dismissal of the lawsuit as a sanction.

II. THE MEDICAL RECORDS
As the second portion of their motion, JR Distributors and Mr. Risch argued that Mr. Howard's lawsuit should be dismissed as a sanction because he revealed only three prior minor accidents or injuries in his deposition, when in fact there were several prior medical matters that Mr. Howard failed to disclose. JR Distributors and Mr. Risch merely attached photocopies of medical records to their motion. They did not provide evidence, medical or otherwise, that would suggest that anything in these records would be important in a trial in this case.
Again, JR Distributors and Mr. Risch did not produce these records at Mr. Howard's deposition to allow him to explain them. Mr. Howard explained in his affidavit that he did not intentionally provide inaccurate information during his deposition. He claimed that he has never had health insurance and has used emergency rooms at hospitals for treatment of minor illnesses or injuries. He claimed that he reviewed the records attached to the motion and that they have refreshed his memory "to some extent."
The medical records attached to the motion are difficult to read. They are primarily from the East Pasco Medical Center Emergency/Outpatient Department. These records indicate that on July 20, 1987, when Mr. Howard was seventeen, he was in an automobile accident in which he cut his scalp and had other minor injuries. He was kept at the emergency room for less than two hours. There is no indication of any additional treatment.
On October 28, 1987, Mr. Howard went to the same department for a pain in his right shoulder and chest following an automobile accident. He stayed at the medical center for about three hours. The written documentation of his diagnosis and treatment is virtually impossible to read, and there is no indication that he received additional treatment for this accident.
On June 27, 1995, he went to the same department with pain in the right side of his neck and arm. The report indicates that he received "observation service" but has no further information.
On May 3, 1996, he went to the same department with a pain in his back that occurred while tugging barrels at work. *314 The doctor appears to have diagnosed a "strain," given him Motrin and an athletic supporter, and sent him immediately back to work with a recommendation that he lift nothing heavier than twenty pounds. Mr. Howard was scheduled for a follow-up appointment on May 8, 1996, but did not attend that appointment.
Finally, on September 6, 1999, Mr. Howard went to the same department complaining of back pain that developed while he was building a fence. He was diagnosed with a muscle spasm and sent home within three hours of arriving at the medical center. He had a lumbar x-ray that was described as a "normal study."[4]
In contrast, Mr. Howard did reveal during deposition three other injuries he had sustained in the past: a slip and fall in 2002 or 2003 that had injured his neck and back, a prior injury to his wrist, and an injury to his foot that occurred at a retail store. In fact, the defendants uncovered the East Pasco Medical Center documents because Mr. Howard had revealed the medical center as a provider of treatment for his injuries in this case.
As with the criminal records, it is doubtful that any of the medical records are documents in evidence. Even if they were, they involve minor incidents for which Mr. Howard appears to have received minimal medical attention. The most recent records from the department included a normal x-ray, which would at least intuitively seem to be helpful to Mr. Howard's claim. No doctor has testified that these records make any difference in this case. The trial court lacked the evidence necessary to conclude that Mr. Howard affirmatively or intentionally misrepresented his prior medical conditions and, relying on the standard announced in Jacob and Cox, the evidence now revealed is insufficient to support the sanction even if one could find intent on the part of Mr. Howard.
The trial court lacked competent, substantial evidence to support the dismissal of Mr. Howard's action, and the proffered evidence would not have supported such a result. We therefore reverse the order dismissing Mr. Howard's action and remand for further proceedings.
Reversed and remanded for further proceedings.
WHATLEY and SILBERMAN, JJ., Concur.
NOTES
[1] This is question 5 of Form 1 of the Standard Interrogatories Forms adopted by the Florida Supreme Court for use in general personal injury negligence cases. See In re Amendment to Rules of Civil ProcedureForm 1.976 Standard Forms For Interrogatories, 577 So.2d 580 (Fla.1991).
[2] See Brown v. Sisto, 532 So.2d 683 (Fla. 5th DCA 1988).
[3] Under Federal Rule of Evidence 609(b), if more than ten years has elapsed since a conviction or since the release of the witness from confinement, whichever is later, there is effectively a presumption that the conviction is inadmissible for impeachment purposes. The rule in Florida is somewhat less restrictive.
[4] Three days before the hearing on the motion for sanctions, JR Distributors and Mr. Risch filed medical records from Dr. Marvin Stalter. These records are not discussed in the motion for sanctions, and it is unclear from the record what, if any, significance they may have. There is no deposition or affidavit explaining these documents.