993 So.2d 1014 (2008)
Sonny RAMEY and Vicky Ramey, Appellants,
v.
HAVERTY FURNITURE COMPANIES, INC. and Peoploungers, Inc., Appellees.
No. 2D07-567.
District Court of Appeal of Florida, Second District.
January 18, 2008.
*1015 W. Bart Meacham, Tampa, for Appellants.
Paul U. Chistolini and William G.K. Smoak of McClain, Smoak & Chistolini, LLC, Tampa, for Appellee Haverty Furniture Companies, Inc.
Scott A. Cole and Luisa M. Linares of Cole, Scott & Kissane, P.A., Miami, for Appellee Peoploungers, Inc.
CANADY, Judge.
Sonny and Vicky Ramey, the plaintiffs in a personal injury action against Haverty Furniture Companies, Inc., and third-party defendant, Peoploungers, Inc., appeal the trial court's order dismissing their action for fraud on the court. The Rameys contend that there was an insufficient basis to justify imposition of the extreme sanction of dismissal. For the reasons we explain, we affirm the trial court's order dismissing the Rameys' complaint.

I. Background

The Rameys filed a complaint against Haverty for negligence, alleging that in 2001 Haverty's delivery personnel negligently connected a bridge on an entertainment unit that caused personal injury to Sonny Ramey. Haverty filed a third-party complaint against Peoploungers, the company which manufactured the entertainment unit.
In response to interrogatories, Mr. Ramey stated that the bridge of the entertainment unit fell on his head, causing severe headaches, a neck injury, and temporomandibular joint (TMJ) problems. Mr. Ramey stated that he suffered a prior back injury while on the job in 1988 and that he received a settlement from his employer in 1988. He listed Dr. Paul Winters as a physician who treated him for his prior back injury. He stated that he had no prior injuries that were aggravated by the incident involving the entertainment unit.
Mr. Ramey gave a deposition in the underlying case. He testified that as a result of the accident involving the entertainment unit, he suffered stretched neck ligaments, two bulging disks, and a TMJ problem. He testified that as a result of his neck injury, he suffers severe headaches. Haverty's counsel questioned Mr. Ramey regarding any prior neck injuries:
Q. As far as your neck injury, have you ever had a neck problem before?
A. No.
Q. Have you ever injured your neck in any way?
A. No.
Q. Have you ever complained to a doctor about neck pain?
A. No. Not prior to the entertainment center falling.
Q. Yeah. I'm talking about before the entertainment center.
A. Right, no.
Q. No complaints to any doctors about neck pain?

*1016 A. No.
Q. Prior to the headaches that you are having that you relate to the Haverty's incident, have you ever complained about neck painheadaches before?
A. No.
Q. Have you ever had a head injury?
A. You say "complained about headaches." I think everybody has a common headache from time to time that you'll take an aspirin for.
Q. Certainly, certainly.
A. But as far as going to the doctor and saying, "You know, I've got headaches," no.
....
Q. Do you have any neck popping like when you move it around?
A. Yes.
Q. Have you ever had a problem with neck popping before?
A. No.
....
Q. Before we go, I want to make sure I've gotI've got neck problems these are things we're relating to this accidentneck problems, headaches, and TMJ problems?
A. Yes.
....
Q. Okay. In fact, I believe you stated you had never had any neck problems or headaches prior to the
A. No.
Q.Haverty's incident; is that correct?
A. Correct.
Haverty filed a motion to dismiss the Rameys' complaint; the motion was subsequently adopted by Peoploungers. Haverty's motion contended that the complaint should be dismissed for fraud perpetrated on the court, alleging that "Plaintiff Sonny Ramey has repeatedly misrepresented his medical history, which includes extensive treatment for headaches and neck complaints, including neck pain, popping, stiffness and spasms." The motion alleged that Haverty discovered that Mr. Ramey had a significant history of headaches and neck pain along with his lower back pain and that from 1989 until 1996, Mr. Ramey complained to Dr. Winters and received treatment for neck pain, neck popping, severe headaches, as well as back pain. Haverty attached copies of medical records showing that Mr. Ramey received a CT scan of his head in 1989, that he complained of headaches and neck pain in addition to his lower back pain for eight years, and that he received various medications to treat his headaches and neck pain in addition to his back pain. Haverty also attached a workers' compensation settlement relating to Ramey's on-the-job injury in 1988, indicating that he suffered "neck pain and headaches."
The Rameys filed a response to the defendants' motion to dismiss, claiming that Mr. Ramey sought treatment with Dr. Winters for his lower back and did not "remember all of the complaints he made to Dr. Winters." The response also asserted that Mr. Ramey's deposition answers were given after a substantial amount of time had passed from when he received treatments from Dr. Winters for head and neck pain. The Rameys argued that Mr. Ramey's interrogatory answers and deposition testimony did not rise to the level of fraudulent conduct required to justify a dismissal for fraud. Mr. Ramey filed amended answers to interrogatories and an affidavit stating that he associated his prior treatment with Dr. Winters with his lower back injury and not head and neck pain. He stated that "Dr. Winters treated me primarily for my lower back pain resulting from my [earlier] accident *1017 and for the headaches and neck pain that were a byproduct of the back strain."
The trial court held an evidentiary hearing on the defendants' motion to dismiss for fraud. At the hearing, Mr. Ramey testified that he did not understand that his treatment with Dr. Winters was for his head or neck pain. He related his treatment with Dr. Winters with his lower back pain. He testified that he did not intend to defraud the defendants or the court in any way. On cross-examination, Mr. Ramey testified that he did not recall having a CT scan in 1989 or being prescribed several medications for headaches by Dr. Winters. He testified that at the time of his deposition, he did not remember having any prior complaints regarding his neck or head but the medical records presented by Haverty jogged his memory. Ramey testified that at the time of his deposition, he did not recall receiving treatment for his neck and head for the eight-year period from 1988 to 1996.
At the conclusion of the hearing, the trial court stated the following:
The record that's been presented to me is that this plaintiff had a continuing problem with headaches which included neck problems, which included back pain that, apparently, spanned an eight-year period of time.
This is not a one-shot incident where he had a headache one time, and I think that's where the latitude that plaintiffs are allowed is if it's a one-shot thing that happened over a short period of time, that's what the case law is talking about.
No, certainly, we're not required to remember every specific ailment that we've had in our lives, and certainly, a lack of memory is something that the Court should consider.
I should note in this hearing that I've heard no evidence whatsoever that this... plaintiff has in any way suffered from any amnesia, of any other injuries in any way that would affect his memory, yet it's been presented to me that he had eight years of treatment for neck pain, headaches which go to the very heart of what he is claiming this defendant did to him in this particular instance. It's unexplained other than "I forgot."
This is not a situation that has been presented on this record of a one isolated or two isolated incident[s] but, as it's been represented here, an eight-year period of time of at least 13 medical entries of complaints about neck, back pain, headaches, neck pain and a variety of treatments associated therewith.
I find it disturbing that under oath, being asked specific questions, the answer is unequivocally "No" rather than "I don't recall."
I am well aware of the case law and specifically the case of Morgan versus Campbell, a second DCA case, and I do not take this lightly in dismissing this action as I'm doing in this particular situation.
I only reserve this for the most extreme of circumstances, and the Court perceives this circumstance and this instance with legal representation and time for consultation before answering interrogatories and attending a deposition to emphatically answer "No" and then try to correct the situation over a year after the deposition is not forgivable, and therefore, I dismiss this action. I grant your motion to dismiss.
The trial court entered a written order granting the defendants' motion to dismiss for fraud and dismissing the complaint with prejudice. The Rameys filed a motion for rehearing, which the trial court denied by written order. In this order, the court stated that the evidence concerning *1018 Mr. Ramey's conduct "demonstrated clearly and convincingly that the plaintiff sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate this matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense."[1] The court further stated that "the injuries that were lied about are the nexus of the case."

II. Analysis

"[A] trial court has the inherent authority to dismiss an action as a sanction when the plaintiff has perpetrated a fraud on the court." Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002).[2] "Such power is indispensable to the proper administration of justice, because no litigant has a right to trifle with the courts. It is a power, however, which should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing." Tri Star Invs., Inc. v. Miele, 407 So.2d 292, 293 (Fla. 2d DCA 1981).
To determine whether particular conduct was sufficient to justify dismissal for fraud on the court, in Jacob v. Henderson, 840 So.2d 1167, 1169 (Fla. 2d DCA 2003), we followed Cox v. Burke, 706 So.2d 43, 46 (Fla. 5th DCA 1998), in utilizing the test set forth in Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989):
A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.
See also Miller v. Nelms, 966 So.2d 437, 440 (Fla. 2d DCA 2007); Howard v. Risch, 959 So.2d 308, 310-311 (Fla. 2d DCA 2007); Myrick v. Direct Gen. Ins. Co., 932 So.2d 392, 392 (Fla. 2d DCA 2006); Laschke v. R.J. Reynolds Tobacco Co., 872 So.2d 344, 346 (Fla. 2d DCA 2004).
A trial court's decision concerning whether to dismiss a case for fraud on the court is subject to review under the abuse of discretion standard. Morgan, 816 So.2d at 253. We have, however, stated that in this context we apply "an abuse of discretion standard that is somewhat `narrowed.'" Howard, 959 So.2d at 310 (quoting Jacob, 840 So.2d at 1168-69). This standard of review takes into account "the heightened clear-and-convincing-evidence standard regarding ... allegations of fraud." Howard, 959 So.2d at 312. For the trial court to properly exercise its discretion regarding dismissal of a case for fraud on the court, "it must have an evidentiary basis to make that decision." Howard, 959 So.2d at 312. "Trial court rulings are given less deference when" there is no evidentiary hearing and the trial court's decision is "based on the same cold document record that is before the reviewing court." Jacob, 840 So.2d at 1170.
The facts regarding Mr. Ramey's alleged misconduct closely parallel the facts at issue in Morgan, where we affirmed the *1019 trial court's dismissal of the plaintiff's complaint based on its determination after an evidentiary hearing that the plaintiff's testimony in discovery concerning her prior medical treatment was "`blatantly false.'" 816 So.2d at 253. Morgan is controlling here.
In Morgan, the plaintiff disclosed in discovery that prior to the injuries alleged in her suit, she had been treated by a particular chiropractor who "had given her preventative treatments for scoliosis six to eight times over a two-year period." Id. at 252. The plaintiff denied, however, that the chiropractor "had treated her for neck or low back pain"symptoms very much at issue in the plaintiff's suit. Id. During her independent medical examination, the plaintiff again denied that the chiropractor had ever treated her neck.
The Morgan plaintiff's testimony was directly contradicted by evidence adduced at an evidentiary hearing conducted by the trial court on the defendant's motion for sanctions. This evidence showed that the chiropractor had treated the plaintiff sixteen times "based on her complaints of both neck and low back pain." Id. In finding that the plaintiff's testimony was "`blatantly false,'" the trial court rejected the suggestion that the inconsistency could be explained by "`oversights or simply failed memory.'" Id. at 253. The trial court instead concluded that the plaintiff's testimony was "`designed to deceive and outright cover up what the records actually show.'" Id.
In deciding that the trial court had not abused its discretion by dismissing the lawsuit, we emphasized in Morgan that the plaintiff's "false testimony was directly related to the central issue in the case whether the accident in question caused her neck and low back injuries." Id. (emphasis supplied). We recognized the trial court's assessment of the credibility of the plaintiff's testimony at the evidentiary hearing as a basis for the trial court's exercise of discretion. And we rejected the plaintiff's contention that her disclosure that she had been treated by the chiropractorincomplete and misleading as it waswas sufficient to avoid the sanction of dismissal. "Revealing only some of the facts does not constitute [the] `truthful disclosure'" that is required to maintain the "`integrity of the civil litigation process.'" Id. at 254 (quoting Cox, 706 So.2d at 47).
Other cases have followed the reasoning of Morgan. In McKnight v. Evancheck, 907 So.2d 699, 700 (Fla. 4th DCA 2005), the court affirmed the order of dismissal for fraud on the court where the trial court had "found that [the plaintiff] lied about his extensive medical history, which had a direct bearing on his claim for damages." The medical records presented to the trial court in McKnight "were directly contrary to [the plaintiff's] sworn testimony." Noting that no evidentiary hearing was requested by the plaintiff, the court concluded that the plaintiff's "misrepresentations, if they had been successful, would have interfered with the jury's ability to adjudicate the issues." 907 So.2d at 701.
Orders of dismissal for fraud on the court involving similar circumstances have been upheld in numerous cases. See, e.g., Papadopoulos v. Cruise Ventures Three Corp., 974 So.2d 418 (Fla. 3d DCA 2007); Hutchinson v. Plantation Bay Apartments, LLC, 931 So.2d 957 (Fla. 1st DCA 2006); Distefano v. State Farm Mut. Auto. Ins. Co., 846 So.2d 572 (Fla. 1st DCA 2003); Long v. Swofford, 805 So.2d 882 (Fla. 3d DCA 2001); Baker v. Myers Tractor Servs., Inc., 765 So.2d 149 (Fla. 1st DCA 2000); see also Metro. Dade County v. Martinsen, 736 So.2d 794, 795 (Fla. 3d DCA 1999) (holding that trial court abused its discretion in failing to dismiss case *1020 where plaintiff gave sworn false statements "about her accident and medical history" that "went to the heart of her claim and subverted the integrity of the action").
Like the misrepresentations made by the plaintiff in Morgan, Mr. Ramey's misrepresentations concerning his prior medical treatment were "directly related to the central issue in the case." Morgan, 816 So.2d at 253. Such misrepresentations by their very nature "unfairly hamper[] the presentation of the opposing party's... defense." Aoude, 892 F.2d at 1118. As in Morgan, the trial court here conducted an evidentiary hearing which provided an evidentiary basis for the trial court's assessment of the veracity of the deposition testimony and interrogatory responses. There is no material basis for distinguishing Morgan from the instant case.
The Rameys place unwarranted reliance on various cases which have set aside trial court dismissal orders entered for fraud on the court. These cases are readily distinguishable from the instant case. Some of the cases are distinguishable because they involved the circumstance that the trial court failed to conduct an evidentiary hearing and thus lacked a sufficient evidentiary basis for determining that fraud on the court had occurred. See Howard, 959 So.2d at 310; Myrick, 932 So.2d at 392; Jacob, 840 So.2d at 1170; Tri Star Invs., 407 So.2d at 293; Gehrmann v. City of Orlando, 962 So.2d 1059 (Fla. 5th DCA 2007). Certain cases are distinguishable because they presented circumstances that were ambiguous and thus provided no warrant for concluding that a clear showing of fraud had been made. See Laschke, 872 So.2d at 346; Gehrmann, 962 So.2d at 1060-61; Amato v. Intindola, 854 So.2d 812 (Fla. 4th DCA 2003). And some of the cases are distinguishable on the ground that they involved misrepresentations that related to collateral matters rather than to the core of the case. See Howard, 959 So.2d at 314; Laschke, 872 So.2d at 345-46; Kirby v. Adkins, 582 So.2d 1209 (Fla. 5th DCA 1991); Parham v. Kohler, 134 So.2d 274 (Fla. 3d DCA 1961).
Here, the record unequivocally supports the trial court's determination that Mr. Ramey provided intentionally false deposition testimony and interrogatory answers. Mr. Ramey was given a full opportunity at the evidentiary hearing to explain the discrepancies between his sworn responses in discovery and the pertinent medical records. The trial court rejected the explanation offered by Mr. Ramey and concluded that Mr. Ramey's statements in discovery concerning his prior medical treatment were "clearly ... lie[s], which lie[s] [were] stated under oath on numerous occasions." There is nothing ambiguous about the circumstances presented here: Mr. Ramey's dishonesty was blatant. And his dishonesty went right to the heart of the case. In such circumstances, "the need to maintain [the] institutional integrity [of the judicial system] and the desirability of deterring future misconduct" strongly support resort to the severe sanction of dismissal. Aoude, 892 F.2d at 1118.
In providing perjurious testimony, Mr. Ramey engaged in highly culpable misconduct. "Perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals." United States v. Holland, 22 F.3d 1040, 1047 (11th Cir.1994). "[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with *1021 the good order of society." Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), receded from on other grounds by Standard Oil Co. of Cal. v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

III. Conclusion

The trial court properly exercised its discretion in imposing the severe sanction of dismissal for the clearly established severe misconduct of fraud on the court.
Affirmed.
KELLY, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur in this case with the same reluctance that I expressed in my concurrence to Morgan v. Campbell, 816 So.2d 251, 254 (Fla. 2d DCA 2002). When a trial judge dismisses a civil action as a sanction for a plaintiff's misconduct or dishonesty, that order must be warranted in light of the plaintiff's constitutional rights to access to courts and trial by jury. I do not question the trial court's authority to enter such an order, but I question whether the appellate courts have yet fashioned the appropriate test or guidelines for such a sanction. I also remain unconvinced that similar tests or guidelines can be created to establish equivalent sanctions for defendants, especially when the defendant is a corporation. However, under the guidelines in current case law, I feel obligated to concur in this decision.
Two facts in this case trouble me the most. First, the headaches that Mr. Ramey claims to suffer from at this time are the result of trauma to the head. The headaches documented in Dr. Winters' medical records are "muscle contraction tension headaches," stemming from an injury he apparently received while moving a refrigerator in October 1988. Although the records include references to cervical spasm or neck pain at the outset of treatment, after September 1990 the records appear to reference only tension headaches secondary to low back pain in the L5-S1 region. The records indicate that a CT scan of his brain, apparently performed in 1989, was negative.[3] Although Mr. Ramey may have lied under oath or given inaccurate history to the IME physician, Dr. Frank K. Kriz, Jr., it is also possible that he simply experienced these traumatic headaches as something distinctively different from the symptoms he had from the incident years earlier. It is entirely possible that the new symptoms are not an aggravation of any injury suffered in 1988.
Second, Mr. Ramey did little or nothing to hide these prior medical records from the defendant. He repeatedly disclosed his prior treatment by Dr. Winters in his answers to interrogatories and accurately disclosed the primary diagnosis of low back pain. He disclosed that the treatment related to a work-related injury and disclosed both the name of his employer and the fact that the claim had been settled. From the record, it would appear that in order to prove Mr. Ramey's "fraud" upon the court, the defendant is relying upon medical records and employment records obtained through the normal discovery process facilitated by Mr. Ramey's answers to interrogatories.
*1022 I admit that it is hard to draw a line between the content of a plaintiff's discovery deposition that warrants dismissal, as compared to content that a defense attorney should simply look forward to using for effective impeachment at trial. If I were creating the rules today, conflicts established between discovery depositions and medical records, the existence of which were disclosed in the plaintiff's answers to interrogatories, would not warrant the ultimate sanction of dismissal.
Finally, I would note that the trial court dismissed Mrs. Ramey's consortium claim as well as Mr. Ramey's claim, even though there is no finding by the trial court that she had any involvement in concealing any evidence from the court. This issue has not been preserved or argued on appeal, but I doubt that her claim was properly dismissed.
NOTES
[1] The language of the trial court's order tracks the test for fraud on the court from Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989), which we discuss below.
[2] Although the case law and our discussion in this opinion focus on the sanction of dismissal against a plaintiff who has perpetrated a fraud on the court, an equally severe sanction i.e., striking the defendant's answer and defensesmay be employed against a defendant who has perpetrated a fraud on the court. See Tramel v. Bass, 672 So.2d 78 (Fla. 1st DCA 1996).
[3] Dr. Winters did not testify or give a deposition in support of this motion to sanction Mr. Ramey. I am not certain that his records are entirely self-explanatory. Mr. Ramey, however, has not preserved or argued that the doctor needed to be called as a witness at this hearing.