POLEN, J.,
dissenting.[3]
Rule 1.420(a)(1) allows a plaintiff to voluntarily dismiss a case simply by serving a notice at any time before trial or hearing on summary judgment. Initially in Randle-Eastern Ambulance Service v. Vasta, 360 So.2d 68 (Fla.1978), the court held that such a dismissal took the case out of the power of the court for all purposes, explaining:
“The right to dismiss, one’s own lawsuit during the course of trial is guaranteed by Rule 1.420(a), endowing a plaintiff with unilateral authority to block action favorable to a defendant which the trial judge might be disposed to approve. The effect is to remove completely from the court’s consideration the power to enter an order, equivalent in all respects to a deprivation of ‘jurisdiction’. If the trial judge loses the ability to exercise judicial discretion or to adjudicate the cause in any way, it follows that he has no jurisdiction to reinstate a dismissed proceeding. The policy reasons for this consequence support its apparent rigidity.”
360 So.2d at 69. But later in Miller v. Fortune Insurance Co., 484 So.2d 1221 (Fla.1986), the court retreated from its statement in Randle-Eastern Ambulance about the “removing the cause] completely from the court’s consideration the power to enter an order.” Instead the Miller court specified an exception in rule 1.540(b) to the complete loss of jurisdiction from a voluntary dismissal:
“A trial judge is deprived of jurisdiction, not by the manner in which the ■proceeding is terminated, but by the sheer finality of the act, whether judgment, decree, order or stipulation, which concludes litigation. Once the litigation is terminated and the time for appeal has run, that action is concluded for all time. There is one exception to this absolute finality, and this is rule 1.540, which gives the court jurisdiction to relieve a party from the .act of finality in a narrow range of circumstances.” [e.s.]
484 So.2d at 1223. Miller explicitly held that “that Rule 1.540(b) may be used to afford relief to all litigants who can demonstrate the existence of the grounds set out under the rule.”[4] In this case, defendant *956 contends that the court had authority here to consider his motion for relief on the merits because he asserted a specific basis authorized by rule 1.540(b).
Rule 1.540(b)(3) provides:
“On motion and upon such terms as are just, the court may relieve a party :.. from a final judgment, decree, order, or proceeding for ... fraud (whether ... intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.” [e.s.]
In Select Builders of Florida v. Wong, 367 So.2d 1089 (Fla. 3d DCA 1979), the Third District agreed that rule 1.540(b) affords a basis to strike a notice of voluntary dismissal filed to avoid sanctions for relief from the dismissal on account of fraudulent conduct. In explaining its decision, the court noted that in that instance “plaintiff had obtained the affirmative relief it sought, its actions in the cause in the trial court may have been fraudulent on the court and it certainly was within its inherent power (as an equity court) to protect its integrity.” 367 So.2d at 1091. I do not read Select Builders to explicitly hold that “affirmative relief’ is required to establish grounds under' rule 1.540(b) for relief from a voluntary dismissal done to prevent examination into an attempted fraud on the court.[5]
In U.S. Porcelain, Inc. v. Breton, 502 So.2d 1379 (Fla. 4th DCA 1987), we tacitly recognized the Select Builders exception but found it inapplicable where “[t]here are no findings nor conclusions in this case of fraud, deception, irregularities, nor any misleading of the court.” 502 So.2d at 1380. Our agreement with the holding in Select Builders evinces no attempt to narrow the exception to traditional common law fraud, indeed adding as other forms of fraudulent conduct “deception, irregularities, [ ] or any misleading of the court.” [e.s.]
The fact that the fraud exception applied in Select Builders is now commonly recognized as valid under Miller v. Fortune Insurance is seen in the following exposition on the subject from the standard Florida legal encyclopedia:
“In exercising its inherent power to protect its integrity, the trial court is authorized to reinstate a matter and retains jurisdiction over the cause, in order to prevent a fraud on the court, where it appears the plaintiff has perpetrated fraud upon the court to obtain a voluntary dismissal. The original jurisdiction over the dismissed cause first acquired continues for the purpose of entertaining and deciding all appropriate proceedings brought to reopen the case, either by means of an independent equity suit directed against the fraudulently induced order or judgment to have it set aside or by means of a direct motion filed in the case itself praying that the order of dismissal be vacated and the cause returned to the docket of pending cases.”
1 Fla.Jur.2d, Actions § 231 (citing Select Builders); see also Roger A. Silver, The Inherent Power Of The Florida Courts, 39 U. Miami L. Rev. 257, 287 (1985) (“Florida courts have ... inherent power ... to strike a voluntary dismissal” (citing Select Builders)); Henry P. Trawick Jr., Trawicic’s Florida Practice & Procedure § 21:2 (citing Select Builders); 25 Trial Advocate Quarterly 22, 23 (discussing Select Builders). All the texts base the court’s authority to grant relief on the inherent power of the judges to protect the integri *957 ty of the court system in the litigation process.
In opposing defendant’s motion for relief under rule 1.540(b), BNY Mellon relies on Bevan v. D’Alessandro, 395 So.2d 1285 (Fla. 2d DCA 1981). There the court recognized the fraud exception to the voluntary dismissal rule but held it inapplicable where plaintiff did not obtain any relief and the act of filing the voluntary dismissal did not actually rise to the level of a fraud on the court.[6] BNY Mellon argued that, similarly, it had obtained no relief or benefit at that point in the action from the filing of the revised assignment. In denying defendant’s motion for relief under rule 1.540(b), the trial judge appeared to rely heavily on Bevan and that argument of BNY Mellon. Curiously neither Bevan nor BNY Mellon makes any attempt to argue why, as a matter of simple jurisprudence, courts should be precluded from scrutinizing the use of a voluntary dismissal after an unsuccessful attempt to deceive, mislead or defraud a court by producing and filing spurious documents and instruments on which to base a claim in suit.
It is apparent to me that BNY Mellon actually did achieve some benefit by its dismissal. In voluntarily .dismissing the case at that point, it thereby avoided the scheduled depositions of the persons who might have direct knowledge of an attempted fraud on the court. In fact, it is fair to conclude that the only purpose in dismissing was to shelter its agents from having to testify about the questionable documents. It continued to use the voluntary dismissal to stop the trial court from inquiring into the matter, arguing the absence of jurisdiction to do so. To the extent that Miller v. Fortune Insurance can be read to require, as a precondition to relief under rule 1.540(b) from a voluntary dismissal, that the false document benefited the filer in some way, we conclude that any necessary benefit has been shown in this case.
Nor do I find the recent decision in Service Experts LLC v. Northside Air Conditioning & Electrical Service, 56 So.3d 26 (Fla. 2d DCA 2010), apposite to the issue in this case. There, plaintiff filed a voluntary dismissal of the action “after almost two years of litigation, after [defendants] served offers of judgment, after the close of discovery, and after [defendants] moved for summary judgment.” 56 So.3d 26 at 28. Defendants moved under rule 1420[7] to strike the voluntary dismissal, arguing that earlier in the case plaintiff had filed “fraudulent affidavits.” The trial court did not determine whether a fraud on the court had occurred. Instead it found that defendants had satisfied the common law exception to rule 1.420 allowing for voluntary dismissals by showing they “acquired substantive rights in the outcome of [the] matter by the filing of the motion for summary judgment, by making offers of judgment and by setting forth convincing allegations of fraud, all of which would be lost if the dismissal without prejudice were allowed to stand.” 56 So.3d 26 at 28. Accordingly, it gave the parties the option of going to trial or scheduling an evidentiary hearing on whether there had actually been any fraud on the court. Plaintiff thereupon appealed that order on the grounds that it infringed its right of *958 voluntary dismissal. Because Service Experts is obviously based solely on rule 1.420, rather than on a showing of fraud for relief under rule 1.540(b), it is not dispositive of the issue presented in this case.
But, in any event, I disagree with Select Builders, Bevan and Service Experts to the extent of any holding that affirmative relief or even some other benefit is necessary for relief from a voluntary dismissal filed after an attempted fraud on the court has been appropriately raised. Nothing in the logic of Miller v. Fortune Insurance allowing rule 1.540(b) to be used to avoid a voluntary dismissal on the grounds of fraud requires that such fraud must actually achieve its purpose. The purpose served by punishing a fraud on a court does not lie in an indispensable precondition of detrimental reliance — i.e., in successfully deceiving a court into an outcome directly resulting from fraud — but in the mere effort itself to try to use false and fraudulent evidence in a court proceeding.[8] As with criminal law, where the failed attempt itself is an offense punished by law,[9] the power of courts to grant relief from presenting false or fraudulent evidence and imposing sanctions is not confined solely to instances when fraud directly results in an unjust, erroneous judgment.
Indeed there are a number of reported decisions by Florida courts imposing sanctions on a party presenting false or fraudulent evidence without any affirmative relief or a final determination on the merits. See, e.g., Ramey v. Haverty Furn. Co., 993 So.2d 1014, 1019 (Fla. 2d DCA 2008) (upholding sanction of dismissal for misrepresentations in discovery about prior medical treatment “directly related to the central' issue in the case”); McKnight v. Evancheck, 907 So.2d 699, 700 (Fla. 4th DCA 2005) (affirming dismissal for fraud on the court where trial court found plaintiff “lied about his extensive medical history, which had a direct bearing on his claim for damages”); Morgan v. Campbell, 816 So.2d 251, 253 (Fla. 2d DCA 2002) (false testimony in discovery “directly related to the central issue in the case”). We are hard pressed to distinguish in substance the imposition of sanctions in those cases from the one at hand.
One federal appellate decision makes the point well. In Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir.1989), the plaintiff filed a complaint based upon a bogus contract and attached that bogus document to its complaint. When the defendant became aware of the falsity of the contract sued upon, it moved to dismiss the case for the attempted fraud on court. The trial court granted the motion. When plaintiff later refiled its claim and attached the real contract, defendant again moved to dis *959 miss, arguing that the dismissal of the first case barred the claim permanently. The trial court again granted the motion. The court of appeals affirmed both holdings. In an appeal plaintiff argued that the attempted fraud arising from the use of the bogus agreement had no effect ultimately on defendant’s ability to litigate the case or on the court’s ability to make a just decision on the merits. The court rejected the argument on appeal that the attempt to defraud the court had failed and thus could escape punishment, responding:
“The failure of a party’s corrupt plan does not immunize the defrauder from the consequences of his misconduct. When [plaintiff] concocted the agreement, and thereafter when he and his counsel annexed it to the complaint, they plainly thought it material. That being so, ‘[tjhey are in no position now to dispute its effectiveness.’ ”
892 F.2d at 1120.
So, too, BNY Mellon’s attempt to allege and file the assignment of the mortgage was undeniably based on a belief in the necessity for — and the materiality of — a valid assignment of mortgage. Defendant’s colorable showing of possible fraud in the making and filing of the assignment led to the scheduling of the depositions of those involved in making the document and the notice of depositions led directly to the voluntary dismissal to avoid such scrutiny for an attempted fraud. As Aoude forcefully makes clear, a party should not escape responsibility and appropriate sanctions for unsuccessfully attempting to defraud a court by purposefully evading the issue through a voluntary dismissal.
This issue is one of unusual prominence and importance. Recently, the Supreme Court promulgated changes to a rule of procedure made necessary by the current wave of mortgage foreclosure litigation. See In re Amendments to Rules of Civil Procedure, 44 So.3d 555 (Fla.2010). In approving one amendment, the court pointedly explained:
“[Rjule 1.110(b) is amended to require verification of mortgage foreclosure complaints involving residential real property. The primary purposes of this amendment are (1) to provide incentive for the plaintiff to appropriately investigate and verify its ownership of the note or right to enforce the note and ensure that the allegations in the complaint are accurate; (2) to conserve judicial resources that are currently being wasted on inappropriately pleaded ‘lost note’ counts and inconsistent allegations; (3) to prevent the wasting of judicial resources and harm to defendants resulting from suits brought by plaintiffs not entitled to enforce the note; and (4) to give trial courts greater authority to sanction plaintiffs who make false allegations.” [e.s.j
44 So.3d at 556. I think this rule change adds significant authority for the court system to take appropriate action when there has been, as here, a colorable showing of false or fraudulent evidence. We read this rule change as an important refutation of BNY Mellon’s lack of jurisdiction argument to avoid dealing with the issue founded on inapt procedural arcana.
Decision-making in our courts depends on genuine, reliable evidence. The system cannot tolerate even an attempted use of fraudulent documents, and false evidence in our courts. The judicial branch long ago recognized its responsibility to deal with, and punish, the attempted use of false and fraudulent evidence. When such an attempt has been colorably raised by a party, courts must be most vigilant to address the issue and pursue it to a resolution.
I would hold that the trial judge had the jurisdiction and authority to consider the motion under rule 1.540(b) on its merits *960 and — should the court find that a party filed a false and fraudulent document in support of its claim — to take appropriate action, including (without limitation) the striking of a voluntary dismissal filed in aid of such conduct.

. This dissent was actually written by Judge Gary M. Farmer, who retired from this court December 31, 2010. As Judge Farmer can no longer participate in this matter, and since I concurred with his proposed dissent, I now adopt in total his writing. Although I thoroughly agree with this dissent, I want the record to reflect that the words are those of Judge Farmer.

. 484 So.2d at 1224 (citing Shampaine Indus, v. S. Broward Hosp. Dist., 411 So.2d 364 (Fla. 4th DCA 1982)).

. See also Romar Int’l., Inc. v. Jim Rathman Chevrolet/Cadillac, Inc., 420 So.2d 346, 347 (Fla. 5th DCA 1982) (recognizing “narrow exception exists where a fraud on the court is attempted [e.s.] by the filing of the voluntary dismissal'').

. We note that Bevan was decided several years before the supreme court decided Miller v. Fortune Insurance.

. Defendants said :that their motion to strike the notice of voluntary dismissal was not made under rule 1.540 because that rule applies to final judgments, decrees, orders, or proceedings, and the voluntary dismissal they sought to set aside was not a final judgment, decree, or order. The Second District agreed with that “procedural assessment.’’

. See Lance v. Wade, 457 So.2d 1008, 1011 (Fla.1984) (common law fraud requires showing that defendant deliberately and knowingly made false representation actually causing detrimental reliance by the plaintiff); see also Palmas Y Bambu, S.A. v. E.I. DuPont de Nemours & Co., 881 So.2d 565, 573 (Fla. 3d DCA 2004) (when fraudulent misrepresentation is alleged direct causation can be proved only by establishing detrimental reliance).

. See § 777.04(1), Fla. Stat. (2010) (criminalizing and punishing attempts to commit an offense prohibited by law even though the accused fails in the perpetration or is intercepted or prevented in the execution thereof); see also § 817.54 Fla. Stat. (2010) (third degree felony to — with intent to defraud — "obtain[] the signature of any person to any mortgage, mortgage note, promissory note or other instrument evidencing a debt by color or aid of fraudulent or false representation or pretenses, or obtain[] the signature of any person to a mortgage, mortgage note, promissory note, or other instrument evidencing a debt, the false making whereof would be punishable as forgery”).