DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SYNERGY CONTRACTING GROUP,
INC. a/a/o JAMES McGINITY,

Appellant,

v.

HOMEOWNERS CHOICE PROPERTY &
CASUALTY INSURANCE COMPANY, INC.,

Appellee.

No. 2D22-125

_____

September 27, 2023

Appeal from the Circuit Court for Pinellas County; Thomas Ramsberger, Judge.

Madysen Scott-Cavitt and Jason A. Herman of Herman & Wells, P.A., Pinellas Park, for Appellant.

Francesca Stein and Mark D. Tinker of Cole, Scott & Kissane, P.A., Tampa, for Appellee.

MORRIS, Judge.

Synergy Contracting Group, Inc., as assignee of rights under James McGinity's homeowners insurance policy, appeals a final judgment dismissing Synergy's complaint against Homeowners Choice Property and Casualty Insurance Company, Inc. (Homeowners), for fraud upon

the court. Because the facts of this case do not meet the stringent standard for such a harsh sanction, we reverse.

I.    Background

James McGinity and his wife insured their home with Homeowners. In January 2018, the home suffered water damage in the kitchen from a broken pipe. McGinity notified Homeowners and retained Synergy to perform the repair work. McGinity executed an assignment of benefits with Synergy. Synergy submitted estimates to Homeowners, which Homeowners refused to pay in full. Synergy filed a complaint against Homeowners for breach of contract. Homeowners answered that Synergy had "been fully indemnified with no insurance benefits . . . due and owing."

Homeowners served Synergy with interrogatories and deposed McGinity. After the deposition, Homeowners served Synergy with a request for admissions, in answer to which Synergy specifically denied that there were "line items on the estimates . . . that were not performed at the subject property" or "that were already paid for in full" by McGinity. Homeowners moved for dismissal based on fraud upon the court, arguing that the evidence showed that by submitting certain estimates, Synergy was seeking payment for services that Synergy knew had already been paid for or that had not been performed. Synergy responded that there was no evidence to meet the heightened standard necessary for dismissal for fraud upon the court and that any allegation of improper conduct or misrepresentation could be adequately addressed through cross-examination.

The trial court conducted a nonevidentiary hearing, after which the trial court granted Homeowners' motion to dismiss. The trial court found that through McGinity's deposition and Synergy's responses to the

request for admissions, Synergy "set into motion an unconscionable scheme calculated to interfere with the judicial system's ability and partiality to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of opposing party's claim or defense." The trial court found that Synergy had perpetrated a fraud on the court through its false estimates and its false representations of having performed work or services that were not performed. The trial court entered a written order memorializing its ruling and entered judgment in favor of Homeowners.

II.  Analysis

"[A] trial court has the inherent authority to dismiss an action as a sanction when the plaintiff has perpetrated a fraud on the court." *Ramey v. Haverty Furniture Cos.*, 993 So. 2d 1014, 1018 (Fla. 2d DCA 2008) (alteration in original) (quoting *Morgan v. Campbell*, 816 So. 2d 251, 253 (Fla. 2d DCA 2002)).

> A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

*Id.* (quoting *Jacob v. Henderson*, 840 So. 2d 1167, 1169 (Fla. 2d DCA 2003)).

A dismissal for fraud on the court is a sanction that "should be exercised cautiously and sparingly, and only upon a clear showing of fraud, pretense, collusion, or similar wrongdoing." *Id.* (quoting *Tri Star Invs., Inc. v. Miele*, 407 So. 2d 292, 293 (Fla. 2d DCA 1981)). "When reviewing a case for fraud, the court should 'consider the proper mix of factors' and carefully balance a policy favoring adjudication on the merits

with competing policies to maintain the integrity of the judicial system." *Cox v. Burke*, 706 So. 2d 43, 46 (Fla. 5th DCA 1998) (quoting *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1117-18 (1st Cir. 1989)).

"Because 'dismissal sounds the "death knell of the lawsuit," courts must reserve such strong medicine for instances where the defaulting party's misconduct is correspondingly egregious.' " *Id.* (quoting *Aoude*, 892 F.2d at 1118). "[D]ismissal is the most severe of all possible sanctions" and, therefore, "should be employed only in extreme circumstances." *Id.* (first citing *Kornblum v. Schneider*, 609 So. 2d 138, 139 (Fla. 4th DCA 1992); and then citing *Bird v. Hardrives of Delray, Inc.*, 644 So. 2d 89, 90 (Fla. 4th DCA 1994)). "Misconduct that falls short of the rigors of this test, including inconsistency, nondisclosure, poor recollection, dissemblance and even lying, is insufficient to support a dismissal for fraud, and, in many cases, may be well-managed and best resolved by bringing the issue to the jury's attention through cross-examination." *Perrine v. Henderson*, 85 So. 3d 1210, 1212 (Fla. 5th DCA 2012) (first citing *Bologna v. Schlanger*, 995 So. 2d 526, 528 (Fla. 5th DCA 2008); then citing *Granados v. Zehr*, 979 So. 2d 1155, 1158 (Fla. 5th DCA 2008); and then citing *Gehrmann v. City of Orlando*, 962 So. 2d 1059, 1062 (Fla. 5th DCA 2007)); *see also Cross v. Pumpco, Inc.*, 910 So. 2d 324, 328 (Fla. 4th DCA 2005) ("Except in the most extreme cases, where it appears that the process of trial has itself been subverted, factual inconsistencies, and even false statements, are well managed through the use of impeachment and traditional discovery sanctions.").

We review the trial court's decision for abuse of discretion; however, "the trial court's discretion is narrower and our review is more stringent than it would be in other cases evaluated under an abuse of discretion standard because dismissal is regarded as an extreme remedy that

4

should be reserved for extreme cases." *Duarte v. Snap-on Inc.*, 216 So. 3d 771, 775 (Fla. 2d DCA 2017) (citing *Howard*, 959 So. 2d at 310). Moreover, we give " 'less deference when' there is no evidentiary hearing and the trial court's decision is 'based on the same cold document record that is before the reviewing court.' " *Ramey*, 993 So. 2d at 1018 (quoting *Jacob*, 840 So. 2d at 1170).

In support of its motion to dismiss, Homeowners relied primarily on McGinity's deposition testimony, which was taken approximately two years after the work had been done, as well as Synergy's estimates of costs submitted to Homeowners, Synergy's answers to interrogatories, and Synergy's request for admissions. At his deposition, McGinity testified that during the work, he and his wife took the opportunity to make upgrades to their property, understanding that they were personally responsible for the additional costs of the upgrades. McGinity did not recall "what was part of [the] upgrade and what's the obligation of the insurance company," but he paid out of pocket for the upgrades.

Homeowners claimed that Synergy improperly included cabinets, flooring, electrical work, and countertops in its estimates to Homeowners, when McGinity testified that he himself paid out of pocket for those. But as for the cabinets, flooring, and electrical work, McGinity testified that he paid for the upgrades, and it is not clear from McGinity's testimony whether he paid only for the upgraded portion of the work and whether Synergy, as the contractor, was responsible for paying for the standard work.

The estimate for the countertops is more questionable. Synergy sought an amount to replace the tile countertops. McGinity testified that Synergy removed the old tile countertops but that Synergy did not install the new countertops. McGinity "went out and got [his] own countertops."

5

He "found a separate company, paid for [the countertops], and [the company] actually did the installation." Thus it appears that Synergy was seeking payment for a line item that was not performed by or paid for by Synergy.

Homeowners further relied on McGinity's testimony, when compared to the estimates, to show that Synergy sought payment for work in the living room that was not actually performed by Synergy. The estimate included ten line items. McGinity stated that Synergy did not paint the walls, but he also stated that it was possible that Synergy had performed seven of the items but that Synergy had not performed the last three. The painting of the walls was one of the seven items that McGinity stated that Synergy may have performed. Thus it is not clear from McGinity's testimony that this work was not performed by Synergy.

Homeowners also claimed that Synergy sought payment in its estimate relating to packing items and services that Homeowners claimed were not actually performed by Synergy. Homeowners relied on McGinity's testimony that Synergy did not "perform any services relating to packing out the contents of [his] home, putting things in boxes," as well as Synergy's interrogatory response that Synergy "did not handle contents." However, it is clear that McGinity's kitchen was completely remodeled. Yet there is no indication of who handled the contents of the kitchen before and after the remodel, who provided the materials used to pack the contents, and what was meant by the term "handle contents."

We recognize that there are some inconsistencies between the estimates submitted by Synergy, McGinity's testimony, and Synergy's interrogatory responses and answers to request for admissions. There may even be false statements. But after reviewing the cold record, we are unconvinced that the inconsistencies or the false statements in the

6

evidence are enough to demonstrate clearly and convincingly that Synergy set into motion an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense. Two years had passed between the remodel and McGinity's testimony, and McGinity's testimony was not explicitly clear on how payment was made for most of the upgrades and whether certain services were performed. In addition, McGinity testified that there were three project managers during the project, making it difficult for him to communicate about the upgrades. While Homeowners followed up the interrogatories and deposition with a request for admissions, the language of the request was general and did not address the specific discrepancies revealed by McGinity's testimony. And Homeowners did not depose Synergy's project managers or record keepers, and no evidentiary hearing was held at which Synergy could explain the discrepancies in the evidence. *Cf. Ramey*, 993 So. 2d at 1020 (affirming dismissal for fraud on the court where plaintiff "was given a full opportunity at the evidentiary hearing to explain the discrepancies between his sworn responses in discovery and the pertinent medical records," "which provided an evidentiary basis for the trial court's assessment of the veracity of the deposition testimony and interrogatory responses"); *Morgan*, 816 So. 2d at 253 (concluding that trial court did not abuse its discretion in dismissing case for fraud on the court where plaintiff gave "false testimony [that] was directly related to the central issue in the case," medical records showed plaintiff's testimony to be false, and "trial court assessed the credibility of [plaintiff's] testimony at the evidentiary hearing in light of the record evidence and found her explanations for the discrepancies not credible").

We conclude that the facts of this case fall short of the stringent standard required to dismiss a case for fraud on the court. *See Duarte*, 216 So. 3d at 778 ("The limited documentary record before the trial court was not sufficient to justify a decision that dismissal, rather than impeachment at trial or a traditional discovery sanction, was the appropriate remedy for [the plaintiff's] conduct."). The inconsistencies in the limited evidence did not unfairly hamper Homeowners' defense and can be dealt with through impeachment or traditional discovery sanctions. *See Amato v. Intindola*, 854 So. 2d 812, 815-16 (Fla. 4th DCA 2003) (distinguishing cases affirming dismissals for fraud on the court as "examples of knowing deception intended to prevent the defense from discovery essential to defending the claim"). The trial court thus abused its discretion, and we accordingly reverse the final judgment entered in favor of Homeowners and remand for further proceedings.

Reversed.

BLACK and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.