PARIENTE, J.
The issue we address in this case involves an interpretation of the applicable Florida Rules of Civil Procedure governing voluntary dismissals and the extent of the trial court’s inherent authority to remedy alleged fraud on the court through the reinstatement of a dismissed lawsuit. Although the context of the issue as presented in this case arises out of a widespread problem associated with fraudulent documentation filed by various financial institutions seeking to foreclose on real property throughout the state, the specific question we confront centers on the proper interpretation of the Florida Rules of Civil Procedure pertaining to voluntary dismissals and the extent of a trial court’s inherent authority, which is an issue that affects all civil cases in this state.
This case is not about whether a trial court has the authority in an ongoing civil proceeding to impose sanctions on a party who has filed fraudulent documentation with the court. Rather, the specific and narrow question we are asked to resolve is whether an allegation of fraud on the court empowers a trial court to strike a notice of voluntary dismissal, which was properly served by the plaintiff pursuant to Florida Rule of Civil Procedure 1.420(a)(1), to reinstate the dismissed action in order to then again dismiss the action with prejudice as a consequent sanction.[1] In this case, the defendant in the trial court, Roman Pino, who had defaulted on his mortgage, sought to have a notice of voluntary dismissal of the mortgage foreclosure action struck and the case reinstated in order for the trial court to then dismiss the action with prejudice as a sanction to the mortgage holder for allegedly filing fraudulent documentation regarding ownership of the mortgage note.
Sitting en banc, the Fourth District Court of Appeal in Pino v. Bank of New York Mellon, 57 So.3d 950, 952 (Fla. 4th DCA 2011), held that a trial court lacks the authority to set aside a plaintiffs notice of voluntary dismissal at the request of a defendant where the plaintiff has not obtained any affirmative relief before dismissing the case. Because the underlying *26 facts of this case centered on the broader issue of mortgage foreclosure complaints that appeared to be tainted by fraudulent documentation filed on behalf of various financial institutions, the Fourth District certified the following question as one of great public importance:
DOES A TRIAL COURT HAVE JURISDICTION AND AUTHORITY UNDER RULE 1.540(B), FLA. R. CIV. P., OR UNDER ITS INHERENT AUTHORITY TO GRANT RELIEF FROM A VOLUNTARY DISMISSAL WHERE THE MOTION ALLEGES A FRAUD ON THE COURT IN THE PROCEEDINGS BUT NO AFFIRMATIVE RELIEF ON BEHALF OF THE PLAINTIFF HAS BEEN OBTAINED FROM THE COURT?
Id. at 955. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
We answer the certified question in the negative and hold that when a defendant alleges fraud on the court as a basis for seeking to set aside a plaintiffs voluntary dismissal, the trial court has jurisdiction to reinstate the dismissed action only when the fraud, if proven, resulted in the plaintiff securing affirmative relief to the detriment of the defendant and, upon obtaining that relief, voluntarily dismissing the case to prevent the trial court from undoing the improperly obtained relief. Any affirmative relief the plaintiff obtained against the defendant as a result of the fraudulent conduct would clearly have an adverse impact on the defendant, thereby entitling the defendant to seek relief to set aside the voluntary dismissal pursuant to Florida Rule of Civil Procedure 1.540(b)(3). Where the plaintiff does not obtain affirmative relief before seeking the dismissal, measures other than reinstating the dismissed action exist to protect against a plaintiffs abuse of the judicial process. We also conclude that a trial court does not have the inherent authority to strike the notice of voluntary dismissal in such a circumstance. Because in this case the Bank of New York Mellon (BNY Mellon) did not obtain any affirmative relief against Pino before the complaint was dismissed, and because the trial court did not have inherent authority to strike the notice of voluntary dismissal, we approve the result reached by the Fourth District in Pino and write to fully explain our reasoning.
FACTS AND PROCEDURAL HISTORY
In October 2008, BNY Mellon commenced an action in the trial court to foreclose a mortgage held on real property owned by Roman Pino. No party disputes that Pino was in default of the mortgage at the time the suit was filed. BNY Mellon attached to its complaint a copy of the purported mortgage at issue, but BNY Mellon was neither listed nor referenced anywhere on the document. Instead, the attached mortgage listed another entity, Silver State Financial Services, Inc. (SSFS), as the lender, and yet another entity, Mortgage Electronic Registration Systems, Inc. (MERS), as the mortgagee.
Despite not being listed on any of the attached documentation, BNY Mellon alleged in the October 2008 complaint that it owned and held the promissory note and mortgage by assignment. A document evidencing such an assignment or transfer was not attached, and the complaint was silent as to whether the note had ever been negotiated and transferred to BNY Mellon in the manner provided by law.[2] *27 BNY Mellon further alleged that the original note had been “lost, destroyed or stolen.”
Pino initially moved to dismiss BNY Mellon’s complaint for, among other things, the failure to state a cause of action. In his motion, Pino alleged that the October 2008 complaint was defective because BNY Mellon had failed to attach either a copy of the note or a copy of the assignment (or any other evidence of a transfer of ownership). Pino claimed the assignment was crucial to establishing BNY Mellon as a real party in interest to this foreclosure action.
In an apparent attempt to remedy the defects of the original complaint, BNY Mellon filed an amended complaint in February 2009. The amended complaint contained allegations nearly identical to those set forth in the original October 2008 complaint, but the amended complaint no longer stated that the original note had been lost, destroyed, or stolen. In fact, attached to the amended complaint were copies of two documents not included with the original complaint: one entitled “Adjustable Rate Note” and the other entitled “Assignment of Mortgage.”
The Adjustable Rate Note, dated July 25, 2006, listed SSFS as the lender. The Assignment of Mortgage showed MERS, through its assignor, Countrywide Home Loans, Inc., transferring and assigning the subject note and mortgage to BNY Mellon. The date of execution of the attached Assignment of Mortgage was listed as September 19, 2008 — twenty days before BNY Mellon had filed the original October 2008 complaint.
In a motion for sanctions brought pursuant to section 57.105, Florida Statutes (2009), and dated February 17, 2009, Pino alleged that the unrecorded Assignment of Mortgage in the amended complaint was fraudulently backdated and had been created with the intent to commit fraud on the court. Section 57.105 authorizes sanctions in the form of attorney’s fees and other expenses if a trial court determines the party or the party’s attorney knew or should have known that at the time a claim or defense was presented that the claim or defense “[w]as not supported by the material facts necessary to establish the claim or defense” or “[wjould not be supported by the application of then-existing law to those material facts.” § 57.105(l)(a)-(b), Fla. Stat. (2009). The statute also provides for a twenty-one-day safe harbor provision allowing the party to withdraw or correct “the challenged paper, claim, defense, contention, allegation, or denial.” § 57.105(4), Fla. Stat. (2009).
To prove these factual allegations, Pino explained that he had initiated discovery and that upon doing so he would move to dismiss the case for fraud on the court.[3] Pino subsequently scheduled depositions of various notaries and witnesses — all employees of BNY Mellon’s law firm — to take place on March 12, 2009. However, before the scheduled depositions occurred, and within the twenty-one-day safe harbor period set forth in section 57.105(4), BNY Mellon served a notice of voluntary dismissal dated March 9, 2009, dismissing the foreclosure complaint without prejudice pursuant to Florida Rule of Civil Procedure 1.420(a)(1).
*28 Pino did not act on any asserted impropriety in BNY Mellon’s taking of a voluntary dismissal without prejudice until BNY Mellon refiled the foreclosure action. On August 13, 2009, approximately five months after serving the notice of voluntary dismissal, BNY Mellon refiled an identical action against Pino to foreclose on the same mortgage with the assistance of the same law firm that had filed the initial action. Like the amended February 2009 complaint, the August 2009 complaint did not claim that the note was lost, missing, or stolen. However, attached to the August 2009 complaint was a new Assignment of Mortgage notarized on July 14, 2009 — after the voluntary dismissal had been filed in the original action. This new assignment was executed, witnessed, and notarized by persons different from those who were involved with the prior purportedly fraudulent assignment.
Invoking Florida Rule of Civil Procedure 1.540(b), Pino filed a motion in the original, voluntarily dismissed action seeking to strike BNY Mellon’s notice of voluntary dismissal on the grounds of fraud on the court and to dismiss that action with prejudice as a consequent sanction.[4] He also requested an evidentiary hearing to prove these allegations of fraud. BNY Mellon opposed the motion, arguing that the “fraud on the court” exception to the absolute right of voluntary dismissal was available only where the party voluntarily dismissing the case had obtained “affirmative relief’ prior to dismissing the action. Because it had not obtained any affirmative relief, in that it did not foreclose on Pino’s mortgage before voluntarily dismissing the case, BNY Mellon ai'gued that the exception did not apply.
The trial court held a hearing on Pino’s rule 1.540(b) motion, during which the court did not take any sworn testimony or evidence. At the hearing, Pino’s counsel conceded that BNY Mellon had not obtained “affirmative relief’ prior to filing the notice of the voluntary dismissal because BNY Mellon had never foreclosed on Pino’s property. However, Pino argued that BNY Mellon had secured a “benefit” of being shielded from the discovery of fraud. Relying solely on the -written submissions of the parties and the arguments of counsel, the trial court rejected Pino’s argument and denied the rale 1.540(b) motion to strike BNY Mellon’s previously served notice of voluntary dismissal.
The Fourth District, sitting en banc, affirmed the trial court’s denial. See Pino, 57 So.3d at 952. First, the Fourth District reviewed the narrow exceptions Florida courts have carved out of the near-absolute entitlement that Florida’s voluntary dismissal rule 1.420(a) provides to litigants and concluded that none applied in this case. The “most applicable” exception to the right of voluntary dismissal, the Fourth District stated, was established in Select Builders of Florida, Inc. v. Wong, 367 So.2d 1089 (Fla. 3d DCA 1979). Pino, 57 So.3d at 952.
In Select Builders, the trial court had granted the plaintiff relief by expunging a document from public records and quieting title to a parcel of real property. Select Builders, 367 So.2d at 1090. After it was discovered that the plaintiff had committed fraud on the court, the defendants moved for sanctions and the trial court ordered the plaintiff to, among other things, deposit money from the sale of the property with a third party. Id. The *29 plaintiff then filed a notice of voluntary dismissal, which the trial court struck upon request of the defendants. Id. The Third District held that the trial court correctly retained jurisdiction over the dismissed action to prevent fraud on the court, reasoning as follows: “The plaintiff had obtained the affirmative relief it sought, its actions in the cause in the trial court may have been fraudulent on the court and it certainly was within its inherent power [as an equity court] to protect its integrity.” Id. at 1091.
Like the trial court in the instant case, the Fourth District interpreted this holding in Select Builders as requiring BNY Mellon to have obtained affirmative relief from the trial court before the court could retain jurisdiction to strike BNY Mellon’s notice of voluntary dismissal and reinstate the dismissed action. Pino, 57 So.3d at 953. The Fourth District reasoned that in contrast to Select Builders, here, BNY Mellon had not obtained any type of affirmative relief, rendering Select Builders distinguishable. Id. The Fourth District therefore held that “[e]ven if the assignment of mortgage was ‘fraudulent’ in that it was not executed by the proper party, it did not result in any relief in favor of BNY Mellon.” Id.
Second, the Fourth District addressed Pino’s argument that rule 1.540(b) provided an additional method of seeking relief from a notice of voluntary dismissal. The Fourth District cited to this Court’s decision in Miller v. Fortune Insurance Co., 484 So.2d 1221, 1224 (Fla.1986), for the proposition that a defendant could invoke rule 1.540(b) to strike a notice of voluntary dismissal to obtain relief since such a dismissal constituted a “proceeding” within the meaning of that rule. Pino, 57 So.3d at 953. Similar to its analysis of Select Builders, the Fourth District again concluded that “[a] defendant may obtain such ‘relief when a plaintiff has obtained a ruling that has adversely impacted the defendant.” Id. For this construction of rule 1.540(b), the Fourth District turned to the dictionary definition of the term “relieve” as the term is used in the rule:
“Relieve” means “[t]o ease or alleviate (pain, distress, anxiety, need, etc.) ... to ease (a person) of any burden, wrong, or oppression, as by legal means.” The Random House Dictionary of the English Language 1212 (1967). A defendant may obtain such “relief’ when a plaintiff has obtained a ruling that has adversely impacted the defendant. Here, the defendant has not been adversely impacted by a ruling of the court. The fact that a defendant may have incurred attorney’s fees and costs is not an adverse impact recognized as meriting relief. See Serv. Experts, LLC v. Northside Air Conditioning & Elec. Serv. Inc., [56 So.3d 26] (Fla. 2d DCA 2010).
Pino, 57 So.3d at 953-54. The Fourth District held that Pino was not entitled to seek relief pursuant to rule 1.540(b) because he had not suffered an adverse ruling or impact from the notice of voluntary dismissal. Id. at 954.
Finally, the Fourth District discussed a trial court’s inherent authority to protect judicial integrity in the litigation process. See id. The Fourth District acknowledged that dismissal of an action could be used as a sanction when “fraud on the court” was involved, but in the district court’s view, it would not be “an appropriate exercise of the inherent authority of the court to reopen a case voluntarily dismissed by the plaintiff simply to exercise that authority to dismiss it, albeit with prejudice.” Id. According to the Fourth District, a trial court would have inherent authority to reopen a voluntarily dismissed case at the request of a defendant only where the *30 defendant had been “seriously prejudiced.” Id. Because Pino did not allege any prejudice and may have in fact benefited from the dismissal by forestalling the foreclosure, the district court concluded that this rule did not apply. Id.
The Fourth District explained that the appropriate procedure would be to follow rule 1.420, where after the filing of a notice of voluntary dismissal, “Pino would be entitled to his costs and possibly his attorney’s fees,” "with payment as a precondition to the second suit. Id. The Fourth District further observed that a referral of BNY Mellon’s trial attorney for a possible violation of the Code of Professional Responsibility was in order. See id. at 954 & n. 2.
Notwithstanding these remedies, the Fourth District recognized that this case presented a question of great public importance because “many, many mortgage foreclosures appealed] [to be] tainted with suspect documents.” Id. at 954. Responding to Pino’s request to sanction BNY Mellon by denying it the equitable right to foreclose on the mortgage, the district court observed that if this sanction were available after a voluntary dismissal, “it may dramatically affect the mortgage foreclosure crisis in this State.” Id. at 954-55. Consequently, the Fourth District certified the question above to this Court. Id. at 955.
Judge Polen dissented because he would have held that the trial court had jurisdiction and authority to consider the motion under rule 1.540(b) on its merits and to take appropriate action, including striking a voluntary dismissal filed in aid of fraudulent conduct. See Pino, 57 So.3d at 959-60 (Polen, J., dissenting).[5] He wrote that a party “should not escape responsibility and appropriate sanctions for unsuccessfully attempting to defraud a court by purposefully evading the issue through a voluntary dismissal.” Id. at 959.
Following the Fourth District’s affir-mance, Pino sought this Court’s review. After the Court accepted jurisdiction and Pino filed his initial brief on the merits, the parties filed a joint Stipulated Dismissal pursuant to Florida Rule of Appellate Procedure 9.350, advising that they had settled this matter and stipulated to its dismissal. The Court denied the parties leave to dismiss this review proceeding and exercised its discretion to retain jurisdiction over this cause. See Pino v. Bank of N.Y. Mellon, 76 So.3d 927, 931 (Fla.2011). We now address the merits.
ANALYSIS
Although this case arises out of a mortgage foreclosure action, we do not decide broader issues related to mortgage foreclosures in general, such as whether a copy of an assignment of mortgage is necessary to establish standing to foreclose on the mortgage or whether the rights of affected third parties who later purchase foreclosed properties are protected when collateral attacks are brought against otherwise final court proceedings. Rather, the specific issue we decide in this case, which also has implications for civil actions outside of the mortgage foreclosure context, is whether an allegation of fraud on the court empowers a trial court to reopen a lawsuit at the request of a defendant after the plaintiff has already voluntarily dismissed that suit, but where the plaintiff did not obtain any affirmative relief.
Answering this question requires us to construe and interpret the Florida *31 Rules of Civil Procedure and the trial court’s inherent authority to protect judicial integrity in the litigation process. This is a pure question of law, subject to de novo review. See Bosem v. Musa Holdings, Inc., 46 So.3d 42, 44 (Fla.2010) (“Because this is a pure question of law, our standard of review is de novo.”); Saia Motor Freight Line, Inc. v. Reid, 930 So.2d 598, 599 (Fla.2006) (reviewing de novo an interpretation of Florida Rule of Civil Procedure 1.525); Borden v. E.— European Ins. Co., 921 So.2d 587, 591 (Fla.2006) (“This issue involves a question of statutory interpretation and thus is subject to de novo review.”); S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319 (Fla.2005) (reviewing de novo a certified question that involved a pure question of law). We begin with Florida’s voluntary dismissal rule.
I. Plaintiffs Right of Voluntary Dismissal
A plaintiffs right in this state to voluntarily dismiss a civil action once without prejudice is governed by Florida Rule of Civil Procedure 1.420(a)(1). Since the 1960s, Florida’s voluntary dismissal rule has provided plaintiffs with a very broad right and time period within which to dismiss lawsuits. See Fla. R. Civ. P. 1.35(a)(1) (1966) (providing plaintiffs with the right to voluntarily dismiss a civil action before a hearing on a motion for summary judgment or until the jury retires). When BNY Mellon invoked rule 1.420(a)(1) to voluntarily dismiss the foreclosure action it had instituted against Pino, the language of that provision provided in full:
Except in actions in which property has been seized or is in the custody of the court, an action may be dismissed by plaintiff without order of court (A) before trial by serving, or during trial by stating on the record, a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court for decision, or (B) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication on the merits when served by a plaintiff who has once dismissed in any court an action based on or including the same claim.
Fla. R. Civ. P. 1.420(a)(1) (2009) (emphasis added).[6]
Under its terms, rule 1.420(a)(1) authorizes a plaintiff to take one voluntary dismissal without prejudice, unless “otherwise stated in the notice or stipulation,” by serving “a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court.” Id. Until either time period delineated in the rule expires, this Court has long construed the plaintiffs right to take a voluntary dismissal to be “absolute.” Fears v. Lunsford, 314 So.2d 578, 579 (Fla.1975). The trial court has no authority or discretion to deny the voluntary dismissal. The dismissal is effective upon service. See Fla. R. Civ. P. 1.420(a)(1).
*32 It is well accepted that the effect of a plaintiffs voluntary dismissal under rule 1.420(a)(1) is jurisdictional. The voluntary dismissal serves to terminate the litigation, to instantaneously divest the court of its jurisdiction to enter or entertain further orders that would otherwise dispose of the case on the merits, and to preclude revival of the original action. In Randle-Eastern Ambulance Service, Inc. v. Vasta, 360 So.2d 68 (Fla.1978), the Court embraced this principle of law, holding that voluntary dismissals taken pursuant to rule 1.420 are acts of finality that deprive the trial court of jurisdiction over the dismissed case:
The right to dismiss one’s own lawsuit during the course of trial is guaranteed by Rule 1.420(a), endowing a plaintiff with unilateral authority to block action favorable to a defendant which the trial judge might be disposed to approve. The effect is to remove completely from the court’s consideration the power to enter an order, equivalent in all respects to a deprivation of “jurisdiction.” If the trial judge loses the ability to exercise judicial discretion or to adjudicate the cause in any way, it follows that he has no jurisdiction to reinstate a dismissed proceeding. The policy reasons for this consequence support its apparent rigidity-
id. at 69. Our pronouncement in Randle-Eastern was, and still is, consistent with the manner in which federal appellate courts have interpreted the corresponding voluntary dismissal provision set forth in Federal Rule of Civil Procedure 41(a)(1):
The [filing of a Rule 41(a)(1)© notice] itself closes the file. There is nothing the defendant can do to fan the ashes of that action into life and the court has no role to play. This is a matter of right running to the plaintiff and may not be extinguished or circumscribed by adversary or court. There is not even a perfunctory order of court closing the file. Its alpha and omega was the doing of the plaintiff alone. The effect of the filing of a notice of dismissal pursuant to Rule 41(a)(1)© is to leave the parties as though no action had been brought. Once the notice of dismissal has been filed, the [trial] court loses jurisdiction over the dismissed claims and may not address the merits of such claims or issue further orders pertaining to them.
Janssen v. Harris, 321 F.3d 998, 1000 (10th Cir.2003) (alteration in original) (quoting Duke Energy Trading & Mktg., L.L.C. v. Davis, 267 F.3d 1042, 1049 (9th Cir.2001)).
Given its historically liberal construct, the plain language of Florida’s rule 1.420(a)(1) does not take into account a plaintiffs motive in seeking the dismissal, nor does it expressly preclude a plaintiff from taking a dismissal where the objective is tactical. In fact, the rule presupposes that the plaintiff will have a tactical reason for voluntarily dismissing its lawsuit at a particular point in time. See, e.g., DeLuca v. Harriman, 402 So.2d 1205, 1206 (Fla. 2d DCA 1981) (“Florida Rule of Civil Procedure 1.420(a) provides for a broad right of voluntary dismissal for the plaintiff, which, in a majority of cases, the plaintiff would use for tactical advantages.”). Plaintiffs frequently use the right of voluntary dismissal as a tool to cure defects that existed in the dismissed action.
In a general sense then, rule 1.420(a)(1) granted to BNY Mellon the right to freely terminate its original foreclosure action. Unless the actions in this case fall within a specific recognized exception or the Court were to amend the Florida Rules of Civil Procedure to change longstanding and well-established liberal procedures for voluntary dismissals, BNY Mellon had the authority to utilize the voluntary dismissal *33 rule to dismiss the case by serving a notice of voluntary dismissal. We thus next discuss the recognized exceptions.
II. Exceptions to the Divestiture of Jurisdiction
While the language of rule 1.420(b) clearly affords a plaintiff the absolute right to voluntarily dismiss a case once without prejudice,- this Court and Florida’s district courts of appeal have recognized specific situations in which the trial court will not be divested of jurisdiction by virtue of the plaintiffs notice of voluntary dismissal. Pino’s motion to strike BNY Mellon’s voluntary dismissal and reinstate the dismissed action was brought pursuant to Florida Rule of Civil Procedure 1.540(b), which provides a litigant relief from a final judgment based upon fraud. Pino also relied on the case-made exception that permits a trial court to strike a voluntary dismissal under its inherent authority, and the Fourth District has asked us whether inherent authority would give the trial court the authority to strike a notice of voluntary dismissal. Each of these exceptions is examined in turn. Finally, we address the suggestion of the dissent below that Florida Rule of Civil Procedure I.110(b) adds significant authority for the court system to act in mortgage foreclosure eases “when there has been ... a colorable showing of false or fraudulent evidence.” Pino, 57 So.3d at 959 (Polen, J., dissenting).
a. Relief Pursuant to Rule 1.540(b)
In the present case, Pino sought relief pursuant to rule 1.540(b)(3) in an attempt to have the trial court reinstate BNY Mellon’s previously dismissed foreclosure case based on the fraud exception in order to sanction BNY Mellon by dismissing the case with prejudice. Rule 1.540, which this Court has characterized as the “one exception to the rule of absolute finality,” Bane v. Bane, 775 So.2d 938, 941 (Fla.2000), provides in pertinent part:
(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (S) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party ; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application....
Fla. R. Civ. P. 1.540(b) (emphasis added). This language empowers a trial court, upon a proper motion and when the terms are just, “to relieve a party or a party’s legal representative from a final judgment, decree, order, or proceeding” based upon any of the five enumerated grounds, including fraud. Stated differently, the rule requires the occurrence of an event (i.e., a judgment, decree, order, or proceeding) from which the party invoking the rule needs relief after the cause has become final.
In Miller v. Fortune Insurance Co., 484 So.2d 1221, 1224 (Fla.1986), this Court construed the term “proceeding” as used in rule 1.540(b) to encompass voluntary dismissals taken pursuant to rule 1.420(a)(1) and held that the limited jurisdiction conferred on trial courts to grant relief under *34 rule 1.540(b) includes the power to set aside voluntary dismissals. Id. The plaintiffs attorney in Miller filed a voluntary motion to dismiss the case “with prejudice,” but eleven months later moved to strike the language “with prejudice” and to substitute it for the language “without prejudice.” Id. at 1221-22. As authority for the change, the plaintiff cited rule 1.540(b), which provides for relief from a final proceeding due to mistake, inadvertence, or excusable neglect. See id. at 1222. The plaintiff claimed the error was a “secretarial error,” and a supporting affidavit by the secretary stated that the secretary had mistakenly typed “with prejudice.” Id.
The district court affirmed the trial court’s denial of the plaintiffs motion, but this Court quashed the district court’s decision and agreed that “[r]ule 1.540(b) may be used to afford relief to all litigants who can demonstrate the existence of the grounds set out under the rule.” Id. at 1224 (quoting Shampaine Indus. v. S. Broward Hosp. Dist., 411 So.2d 364, 368 (Fla. 4th DCA 1982)). The Court observed that the trial court would have limited jurisdiction to determine whether it had jurisdiction under the rule to grant relief, stating in pertinent part:
Of course, the trial court has jurisdiction to determine whether it has jurisdiction to grant relief. In any case where jurisdiction is a question, the court must have an opportunity to rule on the jurisdictional question, and thus all rules of jurisdiction inherently provide authority for the court to assume jurisdiction for the limited purpose of determining whether a basis exists for the court to proceed further. “A court has the power and duty [i.e. has jurisdiction] to examine and to determine whether it has jurisdiction of a matter presented to it....” 20 Am.Jur.2d Courts § 92 (1965) (footnotes omitted). There is no inconsistency, then, in holding that a court has no jurisdiction, but that the determination of jurisdiction cannot be made without exercising jurisdiction to the extent necessary to make the determination. In a proceeding on a rule 1.540 motion, the court’s final determination of whether to grant relief will inherently include a ruling on jurisdiction. This is different from most judicial acts, but arises because of the unusual procedural status of rule 1.540, which exists to provide jurisdiction where otherwise there would be none.
Id. at 1223-24 (emphasis added). Based on this reasoning, the Court remanded with instructions to the trial court to conduct a hearing to determine if the facts established mistake, inadvertence, or excusable neglect for relief under rule 1.540(b). Id. at 1224.
The Amici for the Mortgage Bankers Association and the Florida Bankers Association argue that Miller involved an erroneous dismissal with prejudice and that rule 1.540 applies only to dismissals with prejudice. However, this Court’s decision in Miller did not alter the general principle set forth in Randle-Eastern that a plaintiffs voluntary dismissal is an act of finality depriving the trial court of jurisdiction over the dismissed case. Miller simply recognized that one exception to this rule exists: a trial court retains jurisdiction under rule 1.540(b) to reheve a party “from the act of finality in a narrow range of circumstances” set forth in the rule. Miller, 484 So.2d at 1223. This rule can be invoked by either the defendant or the plaintiff and regardless of whether the voluntary dismissal was taken with or without prejudice. Miller never drew a distinction between dismissals with prejudice and those without prejudice for the purposes of seeking relief under rule 1.540(b). We therefore reject the argument put forth by *35 the Amici for the Mortgage Bankers Association and the Florida Bankers Association for drawing this distinction.
The problem with the defendant’s attempt to use rule 1.540(b) to have this case reinstated is found in the actual language of rule 1.540(b). While rule 1.540(b) may be used to afford relief to all litigants who can demonstrate the existence of one of the five grounds enumerated therein, including fraud, the rule is nevertheless limited in its application to “reliev[ing ] a party or a party’s legal representative from a final judgment, decree, order, or proceeding.” Fla. R. Civ. P. 1.540(b) (emphasis added). We agree with the Fourth District that in the context of a litigant seeking relief from a plaintiffs voluntary dismissal, he or she may obtain such “relief’ only where the voluntary dismissal being challenged under rule 1.540(b) subjects the litigant to some adverse impact from which he or she must be relieved.
Rule 1.540(b) does not define the term “relieve,” but Merriam-Webster’s Collegiate Dictionary 988 (10th ed. 1999), defines it in the following manner: “[T]o set free from an obligation, condition, or restriction ... to ease of a burden, wrong, or oppression by judicial or legislative interposition ... to bring about the removal or alleviation of.” See Barco v. Sch. Bd. of Pinellas Cnty., 975 So.2d 1116, 1122 (Fla.2008) (“It is appropriate to refer to dictionary definitions when construing statutes or rules.”). Voluntary dismissals are unique and distinct from other types of judgments, decrees, orders, or proceedings from which a litigant may seek relief, in that ordinarily there is no adverse obligation, condition, or restriction that has been placed upon the defendant as a result of the voluntary dismissal itself. Instead, the opposite appears to be true; the voluntary dismissal tends to benefit the defendant because it terminates the litigation then pending against the defendant and extinguishes all obligations, conditions, or restrictions flowing therefrom.
Florida’s case law is replete with examples that almost exclusively show plaintiffs invoking rule 1.540(b) to seek relief and set aside voluntary dismissals inadvertently taken with prejudice. See, e.g., Miller, 484 So.2d at 1223-24; Diaz, Reus & Targ, LLP v. Bird Wingate, LLC II, 66 So.3d 974, 974-75 (Fla. 3d DCA 2011); Wells Fargo Bank, NA v. Haecherl, 56 So.3d 892, 894 (Fla. 4th DCA 2011); Rabello v. Alonso, 927 So.2d 45, 46 (Fla. 3d DCA 2006); DiPiazza v. Palm Beach Mall, Inc., 722 So.2d 831, 832 (Fla. 2d DCA 1998); Davidson v. Lenglen Condo Assoc., 602 So.2d 687, 688 (Fla. 4th DCA 1992); Freeman v. Sanders, 562 So.2d 834, 834-35 (Fla. 1st DCA 1990). This makes sense, of course, because a plaintiff who unintentionally files a dismissal with prejudice to the commencement of another action, like in Miller, is adversely impacted by the dismissal — the plaintiff can no longer bring the same cause of action against the defendant because of res judi-cata principles. See, e.g., Haecherl, 56 So.3d at 893-95 (holding that a plaintiff bank was entitled to seek relief pursuant to rule 1.540(b) in order to relieve itself of a voluntary dismissal inadvertently taken “with prejudice” because the bank “was adversely impacted by the notice of voluntary dismissal”).
In this case, however, it is the defendant who is seeking relief from the plaintiff’s own voluntary dismissal. When it is a defendant who employs rule 1.540(b) as the vehicle to set aside or relieve itself from a plaintiff’s voluntary dismissal, the adverse impact is not as easily identifiable because a voluntary dismissal generally accomplishes nothing from which a defendant would need relief. Under this scenario, common sense dictates that a party *36 would not have a reason to challenge a proceeding in which he or she has not been adversely impacted. Indeed, our review of this issue reveals that examples in which a defendant has attempted to demonstrate some form of adverse impact due to a plaintiffs voluntary dismissal have arisen, for the most part, outside of the rule 1.540(b) context, such as in cases like this one where fraud has been alleged on the part of the plaintiff prior to the plaintiff taking the voluntary dismissal.[7]
The case almost exclusively cited as the origin of this fraud exception is Select Builders, wherein the plaintiff commenced an action to expunge from the public records a federal court injunction that was allegedly improperly filed by the defendants. 367 So.2d at 1090. After legal skirmishes ensued between the parties, the trial court granted the plaintiffs requested relief by issuing an order expunging the document from the public records, quieting title to the real property at issue, and enjoining the defendants from filing any like documents without first domesticating the documents in Florida. Id. When it later came to light that the plaintiff may have perpetrated a fraud on the trial court in obtaining the order expunging the document, the court vacated its previous order. Id.
The defendants moved for sanctions against the plaintiff, contending that it “misled the [trial] court and committed certain procedural irregularities.” Id. In response, the trial court ordered the plaintiff to take immediate steps to place the parties and the property in a status quo. Id. The trial court also required the plaintiff to deposit certain monies that it received from the sale of the property to a third party. Id. The plaintiff then filed a notice of voluntary dismissal pursuant to rule 1.420(a)(1). Id. After the defendants moved to strike the voluntary dismissal, the trial court granted thé motion, struck the plaintiffs voluntary dismissal, and retained jurisdiction over the cause. Id.
The Third District in Select Builders affirmed, finding the trial court “to be correct in striking the voluntary dismissal and reinstating the matter to prevent a fraud on the court.” Id. at 1091. The district court explained that the plaintiff “had obtained the affirmative relief it sought, its actions in the cause in the trial court may have been fraudulent on the court and it certainly was within its inherent power [as an equity court] to protect its integrity.” Id. The Third District then distinguished other cases in which the plaintiffs right to take a voluntary dismissal was absolute: “First, the plaintiff in the cited cases had not received affirmative relief from an equity court and, secondly, no question of fraud on the court was involved.” Id.
Although this Court has never discussed Select Builders, Florida’s intermediate appellate courts have recognized the Select Builders exception on a variety of occasions. Yet, rarely has it been invoked as a basis for affirming the trial court’s striking of a plaintiffs voluntary dismissal at a defendant’s request.[8] Generally, decisions *37 by other courts acknowledging the exception from Select Builders have simply noted its existence without applying it.[9] Other decisions have interpreted the Select Builders exception to apply where the notice of voluntary dismissal itself was considered an attempt to commit fraud on the court.[10] Still others have required a showing both that the plaintiff used the voluntary dismissal to perpetrate fraud and that the plaintiff fraudulently secured “affirmative relief’ before taking the dismissal.[11]
In Bevan v. D’Alessandro, 395 So.2d 1285, 1285-86 (Fla. 2d DCA 1981), for example, the Second District reversed the trial court’s entry of a dismissal with prejudice of the plaintiffs replevin action for failure to prosecute because the trial court’s order was entered after the plaintiff had voluntarily dismissed the case. The Second District distinguished the case before it from Select Builders on the basis that the plaintiff had received no affirmative relief and that his actions did not rise to the level of fraud on the court, stating as follows:
We are aware that in Select Builders of Florida, Inc. v. Wong, 367 So.2d 1089 (Fla. 3d DCA 1979), the court carved out a narrow exception to the general rule, holding a voluntary dismissal inoperative in situations where fraud on the court was attempted by the filing of a voluntary dismissal. There, however, the plaintiff had received affirmative relief to which he was not entitled and sought to avoid correction of the trial court’s error by taking a voluntary dismissal. Here, on the other hand, [the plaintiff] has received no affirmative relief, nor does his action in taking a voluntary dismissal rise to the level of a fraud on the court under the circumstances. Therefore, although we feel [the plaintiff] has thwarted the intent and purpose of the rule, his absolute right to the benefits of rule 1.420(a)(1) superseded his responsibility to comply with rule 1.420(e).
*38 Bevan, 395 So.2d at 1286 (emphasis added).
The Second District reaffirmed this holding most recently in Service Experts, LLC v. Northside Air Conditioning & Electrical Service, Inc., 56 So.3d 26, 31-32 (Fla. 2d DCA 2010). In Service Experts, after almost two years of litigation, after the defendants served offers of judgment, after the close of discovery, and after the defendants moved for summary judgment (but before the hearing on the summary judgment motion), the plaintiff filed a notice to voluntarily dismiss its complaint without prejudice. Id. at 28. The defendants responded by filing a motion to strike the plaintiffs notice of voluntary dismissal or for an entry of a dismissal with prejudice, arguing in part that the plaintiff had perpetrated fraud on the court by filing two fraudulent affidavits with respect to a motion for sanctions the defendants had pending against the plaintiff. Id.
The Second District reversed the trial court’s order permitting an evidentiary hearing to determine whether fraud had been perpetrated on the court. Id. at 29. According to the district court, Select Builders was inapposite because the plaintiffs voluntary dismissal did not prevent the court from taking away any relief the plaintiff had obtained through fraudulent means:
This case is distinguishable from Select Builders and the other cases cited above. The Northside defendants’ allegations of fraud were only related to [the plaintiffs] filing of two affidavits in response to the Northside defendants’ section 57.105 motion for sanctions. The Northside defendants contend that the two affidavits contained false statements and were filed “to convince the court that [the plaintiff] had a good faith basis to file” the lawsuit. Yet, the trial court never ruled on the merits of the North-side defendants’ section 57.105 motion for sanctions, and there is no record evidence that the trial court relied on the two affidavits to confer upon [the plaintiffs] any affirmative relief or benefit. The Northside defendants rightfully argued at that time in their reply to [the plaintiffs] opposition to the section 57.105 motion that “the court should not decide this motion until it has determined which party has prevailed.” Thus, unlike Select Builders, this is not a case where the plaintiff engaged in fraud which resulted in affirmative relief from the court and, upon obtaining that relief, voluntary dismissed the case to prevent the court from taking away the ill-gotten relief. Without evidence of ill-gotten relief connected to the fraud allegations, the Northside defendants’ allegations were insufficient to support striking the notice of voluntary dismissal on the basis of fraud.
Id. at 32.
We agree with the Second District that Select Builders is a narrow rule that applies where the voluntary dismissal prevents the court from undoing affirmative relief that has been improperly obtained by the plaintiff. In other words, where fraud is alleged by the defendant as a basis for seeking to set aside the plaintiffs voluntary dismissal, relief may be warranted when the plaintiffs fraud resulted in the plaintiff securing affirmative relief from the court to the detriment of the defendant and, upon obtaining that relief, the plaintiff voluntarily dismissed the case to prevent the court from undoing the improperly obtained relief. Although Select Builders neither references nor discusses rule 1.540(b)(3) as a basis for vacating a voluntary dismissal, we read the case as being consistent with the rule and as *39 providing one example of an application of that rule as employed by a defendant.
In sum, to obtain the benefit of rule 1.540(b) on the basis of a plaintiffs voluntary dismissal, a defendant must suffer adverse impact as a result of the plaintiffs receipt of affirmative relief from which the defendant should be alleviated. This requirement is found in the language of the rule itself, which is limited in application to “relieving] a party or a party’s legal representative from a final judgment, decree, order, or proceeding.” Fla. R. Civ. P. 1.540(b) (emphasis added). In other words, the voluntary dismissal being challenged under rule 1.540(b) must subject the litigant to some adverse impact from which he or she needs relief. Applied in the context of a voluntary dismissal taken after fraudulent conduct by a plaintiff, any affirmative relief the plaintiff obtained against the defendant as a result of fraudulent conduct would clearly have an adverse impact on the defendant, thereby entitling the defendant to seek redress under rule 1.540(b)(3). On the other hand, where the alleged fraud does not lead to the plaintiff obtaining affirmative relief to the detriment of the defendant, rule 1.540(b)(3) would not be the proper vehicle for a trial court to reopen a case voluntarily dismissed by a plaintiff.
b. Trial Court’s Inherent Authority
The certified question also asks this Court whether a trial court has the inherent authority to strike a notice of voluntary dismissal where the defendant has alleged fraud on the court. In its decision, the Fourth District discussed two lines of cases involving a trial court’s inherent authority. Neither is applicable to the situation presented by this case.
The first is where a trial court grants relief from fraudulent conduct in the context of a pending action.[12] In that line of cases, the defendant moved for the sanction of dismissal of an ongoing proceeding, not the sanction of reopening a previously dismissed case just to dismiss it again with prejudice. See Pino, 57 So.3d at 954 (“[A] court possesses the authority to protect judicial integrity in the litigation process. However, the cases cited in support of a court exercising such authority all involved the court granting a [defendant’s] motion for involuntary dismissal where the plaintiff had engaged in deceitful conduct during a still pending case.”). We therefore agree with the Fourth District’s conclusion that this line of eases is inapposite here.
*40 The second line of cases discussed by the Fourth District involves the “serious prejudice” exception. Relying on precedent discussing this common law exception, the Fourth District held that under certain circumstances, a trial court would have the inherent authority to strike a notice of voluntary dismissal and reopen the dismissed case, but only where the defendant has been “seriously prejudiced” by the dismissal. Pino, 57 So.3d at 954; see also Ormond Beach Assocs. Ltd. v. Citation Mortgage, Ltd., 835 So.2d 292, 295 (Fla. 5th DCA 2002) (holding that a court may strike a plaintiffs notice of voluntary dismissal “where the defendant demonstrates serious prejudice, such as where he is entitled to receive affirmative relief or a hearing and disposition of the case on the merits, has acquired some substantial rights in the cause, or where dismissal is inequitable”); Serv. Experts, 56 So.3d at 30 (relying on Ormond Beach to recite the same); Patterson v. Allstate Ins. Co., 884 So.2d 178, 179-80 (Fla. 2d DCA 2004) (same).
This so-called exception originated in several older equity cases decided by the Court during the first half of the twentieth century. See Shaw v. Morrison, 145 Fla. 443, 199 So. 566, 567 (1941); Willson v. Buxton, 110 Fla. 286, 149 So. 329, 330-31 (1933); Demos v. Walker, 99 Fla. 302, 126 So. 305, 306 (1930); Abney v. Hurner, 97 Fla. 240, 121 So. 883, 884 (1929); Smith v. Milham, 94 Fla. 1159, 115 So. 532, 533 (1927); Sontag Inv. Co. oflnd. v. Nautilus Realty Co., 78 Fla. 529, 83 So. 389, 390 (1919); Mayfield v. Wernicke Chem. Co., 65 Fla. 113, 61 So. 191, 193 (1913); Tilghman Cypress Co. v. John R. Young Co., 60 Fla. 382, 53 So. 939, 940 (1910). These cases, however, predate the contemporary rules of civil procedure when the acceptance of a dismissal of an action in equity was within a trial court’s discretion. Under a plain reading of rule 1.420(a)(1), the trial court now has no authority or discretion to deny a plaintiffs service of a notice of voluntary dismissal, as the dismissal is effective upon service. See Fla. R. Civ. P. I.420(a)(1). Therefore, we conclude that the common law “serious prejudice” standard no longer remains a viable mechanism for a trial court to strike a plaintiffs voluntary dismissal as a separate ground.
c. Florida Rule of Civil Procedure 1.110(b)
We also address the Fourth District’s dissenting opinion and its suggestion that amended Florida Rule of Civil Procedure 1.110(b) “add[ed] significant authority for the court system to take appropriate action when there has been, as here, a colorable showing of false or fraudulent evidence.” Pino, 57 So.3d at 959 (Polen, J., dissenting). However, we disagree that the language of rule 1.110(b) provides a trial court with the authority to reopen a case that has been voluntarily dismissed. As amended in 2010, rule 1.110(b) requires verification of foreclosure complaints and provides in pertinent part:
When filing an action for foreclosure of a mortgage on residential real property the complaint shall be verified. When verification of a document is required, the document filed shall include an oath, affirmation, or the following statement: “Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.”
Fla. R. Civ. P. 1.110(b). When this amendment went into effect, this Court stated the reasons for the change as follows:
[Rjule 1.110(b) is amended to require verification of mortgage foreclosure complaints involving residential real property. The primary purposes of this *41 amendment are (1) to provide incentive for the plaintiff to appropriately investigate and verify its ownership of the note or right to enforce the note and ensure that the allegations in the complaint are accurate; (2) to conserve judicial resources that are currently being wasted on inappropriately pleaded “lost note” counts and inconsistent allegations; (3) to prevent the wasting of judicial resources and harm to defendants resulting from suits brought by plaintiffs not entitled to enforce the note; and (4) to give trial courts greater authority to sanction plaintiffs who make false allegations.
In re Amends. to the Fla. Rules of Civ. Pro., 44 So.3d 555, 556 (Fla.2010) (emphasis added). While the intended purpose of the rule amendment was to give trial courts more power to sanction plaintiffs who make false allegations in mortgage foreclosure filings, it did not vest trial courts with the authority to strike a voluntary dismissal, reinstate the dismissed action, and then dismiss the action with prejudice as a consequent sanction.
III. Sanctions Under Section 57.105, Florida Statutes
As discussed above, rule 1.540(b)(3) does not empower a trial court to strike a notice of voluntary dismissal where the alleged fraud does not lead the plaintiff to obtain affirmative relief to the detriment of the defendant; nor does the trial court have the inherent authority, or authority under rule 1.110(b), to strike a notice of voluntary dismissal for the purposes of reinstating a case in order to dismiss it with prejudice as a sanction. However, we emphasize that this does not mean a trial court is powerless to sanction fraudulent conduct. A notice of voluntary dismissal does not divest a trial court of jurisdiction to award sanctions under section 57.105, Florida Statutes (2012), even after a voluntary dismissal is taken.
Section 57.105 generally “provides the basis for sanctions against parties and counsel who assert frivolous claims or defenses or pursue litigation for the purpose of unreasonable delay.” Bionetics Corp. v. Kenniasty, 69 So.3d 943, 944 (Fla.), cert. denied, — U.S. -, 132 S.Ct. 848, 181 L.Ed.2d 563 (2011). The statute was amended, effective in 2002, to include a twenty-one-day safe harbor provision, which provides that a party may not seek sanctions under section 57.105 unless “the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected” within twenty-one days. Id. (quoting § 57.105(4), Fla. Stat. (2009)). Because the rule allows a party to withdraw the offending pleading, the question arises as to whether this safe harbor provision requires that a motion for sanctions under section 57.105 be filed pri- or to the dismissal of the case, but allows a party to voluntarily dismiss the case within twenty-one days of the service of the rule 57.105 motion to avoid sanctions.
To answer this question, we examine the comparable federal counterpart to section 57.105 — Federal Rule of Civil Procedure 11. Before Rule 11 was amended to include a similar twenty-one-day safe harbor provision, the United States Supreme Court in Cooter & Gell v. Hartman Corp., 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), held that a trial court has jurisdiction to impose sanctions under Rule 11, even after a plaintiff voluntarily dismisses a civil action. In affirming the trial court’s award of sanctions, the Supreme Court reasoned that “a voluntary dismissal does not expunge the Rule 11 violation” since the violation “is complete *42 when the paper is filed.” Id.[13]
After the Supreme Court’s decision in Cooler., Federal Rule 11 was amended to include a “safe harbor” provision, which requires that the party moving for sanctions notify the non-moving party of its intention to move for sanctions and that the Rule 11 motion “must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.” Fed.R.Civ.P. 11(c)(2). Courts have interpreted this to mean that the rule established by Cooler was “partially superceded by the amendment of Rule 11 in 1993 to include a ‘safe harbor’ provision.” de la Fuente v. DCI Telecomms., Inc., 259 F.Supp.2d 250, 257 n. 4 (S.D.N.Y.2008). As one court has explained:
This safe harbor provision requires that a party seeking Rule 11 sanctions wait 21 days from the service of their motion before filing it with the court, in order to give the party the opportunity to withdraw or appropriately correct the challenged paper, claim, defense, contention, allegation, or denial. Fed.R.Civ.P. 11(c)(1)(A). Thus, a court can no longer issue Rule 11 sanctions in a case where, as in Cooler & Gell, a complaint was voluntarily dismissed within 21 days of a request for Rule 11 sanctions.
Id. In light of the safe harbor provision, a motion for sanctions under Rule 11 must be submitted prior to the dismissal of a case for a court to have jurisdiction because the rule allows the party to withdraw the offending pleading. See, e.g., Hockley by Hockley v. Shan Enters. Ltd. P’ship, 19 F.Supp.2d 235, 241 (D.N.J.1998) (“Since Shan withdrew its position when it voluntarily dismissed its claims, it is not subject to Rule 11 sanctions.”); Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449, 452 (E.D.N.Y.1995) (holding that 1993 Rule 11 superseded Cooter & Gell and precluded award of sanctions following a voluntary dismissal of the action); Morroni v. Gunderson, 169 F.R.D. 168, 171 (M.D.Fla.1996) (holding that “a party who seeks Rule 11 sanctions based upon allegations in a complaint, cannot wait until the action has been voluntarily dismissed by the opposing party because the party who voluntarily dismisses a case has withdrawn the offending pleading by dismissing the case”).
Florida’s statutory twenty-one-day safe harbor provision is nearly identical to its federal counterpart, see § 57.105(4), Fla. Stat. (2009), and we interpret this state’s provision similarly. If the plaintiff does not file a notice of voluntary dismissal or withdraw the offending pleading within twenty-one days of a defendant’s request for sanctions under section 57.105, the defendant may file the sanctions motion with the trial court, whereupon the trial court will have continuing jurisdiction to resolve the pending motion and to award attorney’s fees under that provision if appropri *43 ate, regardless of the plaintiffs subsequent dismissal.
IY. This Case
Turning to this case, before BNY Mellon filed a notice of voluntary dismissal, Pino served upon BNY Mellon a request for sanctions pursuant to section 57.105, alleging that a fraudulently backdated assignment of mortgage had been attached to BNY Mellon’s amended complaint. Pino further alleged that upon proving such fraud, he would move to dismiss the foreclosure action. His motion did not actually seek to dismiss the case. Pino did not have an opportunity to file the sanctions motion with the court and prove these allegations because BNY Mellon voluntarily dismissed the suit pursuant to rule 1.420(a)(1) within the safe harbor time period set forth in section 57.105.
Five months later, BNY Mellon commenced a new action, and Pino then filed a motion in the previously dismissed action seeking to set aside BNY Mellon’s voluntary dismissal and to reinstate the matter in light of an allegation of fraud on the court. Pino further sought to have the case dismissed with prejudice as a consequent sanction.
Rule 1.540(b), which Pino invoked to have the voluntary dismissal set aside, is limited to relieving a party of a proceeding (here, the voluntary dismissal) where the movant (here, Pino) establishes that he or she has been adversely impacted by the proceeding. A defendant can establish an adverse effect from a plaintiffs voluntary dismissal under rule 1.540(b)(8) where the plaintiff has fraudulently obtained affirmative relief prior to the dismissal and the plaintiff then takes the dismissal to prevent the court from undoing any improperly obtained relief the court previously granted. In such an instance, the trial court has jurisdiction to conduct an eviden-tiary hearing to determine if the fraud has been proven, and if so, to then grant the appropriate relief.
In this case, however, Pino conceded that BNY Mellon did not obtain affirmative relief prior to taking the voluntary dismissal. Even if the assignment of mortgage attached to the amended complaint was fraudulently backdated, BNY Mellon did not actually foreclose on the mortgage. Sanctions pursuant to section 57.105 were unavailable because BNY Mellon dismissed the case within twenty-one days of Pino’s request for sanctions. Under the facts of this case, Pino could not obtain the relief of setting aside the voluntary dismissal and reinstating the dismissed action in order to obtain the sanction of dismissal with prejudice.
Other measures to protect against a plaintiffs abuse of the judicial process exist outside of reinstating the dismissed action. First, BNY Mellon has lost the benefit of its one free voluntary dismissal. If BNY Mellon sought to voluntarily dismiss the foreclosure action again, its dismissal notice would be with prejudice and operate as an adjudication on the merits. See Fla. R. Civ. P. 1.420(a)(1). Second, “[ujpon the voluntary dismissal, Pino would be entitled to his costs and possibly his attorney’s fees,” and “[t]he court can require payment as a precondition to the second suit.” Pino, 57 So.3d at 954 (citing Fla. R. Civ. P. 1.420(d)). Finally, allegations of an attorney’s filing of fraudulent documents in connection with his or her client’s lawsuit would warrant a referral of that attorney to The Florida Bar for a possible violation of the Code of Professional Responsibility. See id. at 954 & n. 2.
CONCLUSION
Based on the above, we answer the certified question in the negative. We hold that when a defendant alleges fraud on *44 the court as a basis for seeking to set aside a plaintiffs voluntary dismissal, the trial court has jurisdiction to reinstate the dismissed action only when the fraud, if proven, resulted in the plaintiff securing affirmative relief to the detriment of the defendant and, upon obtaining that relief, voluntarily dismissing the case to prevent the trial court from remedying the effects of the fraudulent conduct. Any affirmative relief the plaintiff obtained against the defendant as a result of the fraudulent conduct would clearly have an adverse impact on the defendant, thereby entitling the defendant to seek relief to set aside the voluntary dismissal pursuant to Florida Rule of Civil Procedure 1.540(b)(3).
In this case, because BNY Mellon did not obtain affirmative relief before taking the voluntary dismissal, the trial court did not have jurisdiction to reinstate the dismissed foreclosure action for the purpose of dismissing the action with prejudice. We also conclude that the trial court did not have the inherent authority to strike the notice of voluntary dismissal. Because Pino sought no other available sanctions, and the case has since been resolved between the parties, we need not reach the question of whether the trial court should be able to award monetary sanctions under the circumstances of this case. We therefore approve the result reached by the Fourth District affirming the trial court’s denial of Pino’s motion.
While affirming the decision of the Fourth District, we also understand the concerns of those who discuss the multiple abuses that can occur from fraudulent pleadings being filed with the trial courts in this state. While rule 1.420(a)(1) has well served the litigants and courts of this state, we request the Civil Procedure Rules Committee review this concern and make a recommendation to this Court regarding whether (a) explicit sanction authority should be provided to a trial court pursuant to rule 1.110(b), even after a case is voluntarily dismissed, (b) rule 1.420(a)(1) should be amended to expressly allow the trial court to retain jurisdiction to rule on any pending sanction motions that seek monetary sanctions for abuses committed by either party during the litigation process, or to allow the trial court explicit authority to include attorney’s fees in any award to a party when the dismissed action is reinstated, or (c) to adopt a rule similar to Federal Rule 11 to provide explicit authority for the trial court to impose sanctions.
It is so ordered.
LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., and CANADY, J„ concur in result only.

. Amicus briefs were filed by the law firm of Kaufman, Englett, and Lynd; the Mortgage Bankers Association and the Florida Bankers Association; and the Florida Land Title Association and the American Land Title Association.

. Section 673.2011(1), Florida Statutes (2008), defines the term "negotiation” as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person *27 other than the issuer to a person who thereby becomes its holder." If an instrument is payable to an identified person, "negotiation requires transfer of possession of the instrument and its indorsement by the holder.” § 673.2011(2), Fla. Stat. (2008).

. Pino also filed a motion to dismiss BNY Mellon’s amended February 2009 complaint in which he repeated his allegation that the Assignment of Mortgage appeared to be fraudulently backdated in order to avoid dismissal.

. Rule 1.540(b) provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for ... fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.” Fla. R. Civ. P. 1.540(b).

. In the introductory footnote to his dissent, Judge Polen explained that the dissent was actually written by Judge Farmer, who had since retired and could no longer participate in this matter. Id. at 955 n. 3.

. Effective January 1, 2011, the Court amended rule 1.420(a)(1) to allow "a claim, or any part of an action or claim,” rather than just an "action,” to be voluntarily dismissed. In re Amends, to the Fla. R. of Civ. P., 52 So.3d 579, 587 (Fla.2010). BNY Mellon filed the subject notice of voluntary dismissal before this rule amendment went into effect. The rule amendment has no bearing on the question at issue in this case.

. See, e.g., Freeman v. Mintz, 523 So.2d 606, 608 (Fla. 3d DCA 1988) (defendant attempted to set aside the plaintiff's filing of a voluntary dismissal after the trial court had orally announced it would grant the defendant’s motion to involuntarily dismiss the case with prejudice but before the trial court had an opportunity to enter a written order of involuntary dismissal); Ambory v. Ambory, 442 So.2d 1087, 1087-88 (Fla. 2d DCA 1983) (defendant attempted to set aside the plaintiff's voluntary dismissal, which was filed the day after the trial court orally announced that it was involuntarily dismissing the case but before the court entered a formal order of voluntary dismissal with prejudice).

. Pino has not cited to any reported decision in addition to Select Builders that has actually *37 affirmed a trial court’s use of the rule announced in that case. We have only located one other instance, but that decision did not provide any reasoning for doing so. See Blain v. Blain, 54 So.3d 547, 547-48 (Fla. 3d DCA 2011).

.See, e.g., Patterson v. Allstate Ins. Co., 884 So.2d 178, 180 (Fla. 2d DCA 2004) (recognizing the fraud exception, but not applying it); Tobkin v. State, 777 So.2d 1160, 1164 (Fla. 4th DCA 2001) (recognizing the fraud exception, but not applying it because there was no indication that the party who filed the voluntary dismissal perpetrated fraud on the court); Dune v. Hanson, 691 So.2d 485, 486 n. 2 (Fla. 5th DCA 1997) (recognizing the exception from Select Builders but concluding that it was "not applicable to the instant case”); Marine Contractors, Inc. v. Armco, Inc., 452 So.2d 77, 79 & n. 2 (Fla. 2d DCA 1984) (noting the right to seek a voluntary dismissal was "almost absolute” because "[o]ne possible exception [was] where the party taking the voluntary dismissal perpetrates a fraud on the court”); Romar Int’l, Inc. v. Jim Rathman Chevrolet/Cadillac, Inc., 420 So.2d 346, 347 (Fla. 5th DCA 1982) (recognizing the fraud exception, but not applying it).

. See, e.g., Fitzgerald v. Fitzgerald, 790 So.2d 1216, 1217 (Fla. 2d DCA 2001) (concluding that the trial court was required to accept a notice of voluntary dismissal where "the trial court made no finding of fraud, and there is no basis in the record to find that the notice constituted a fraud on the court” (emphasis added)); Romar Int’l, Inc., 420 So.2d at 347 ("A narrow exception [to the plaintiff's right to voluntarily dismiss his lawsuit] exists where a fraud on the court is attempted by the filing of the voluntary dismissal....” (emphasis added)).

. See, e.g., Serv. Experts, LLC, 56 So.3d at 32 (acknowledging the affirmative relief requirement from Select Builders, but noting that other courts have interpreted the fraud exception to apply where the notice of dismissal itself was considered an attempt to commit fraud on the court).

. See, e.g., Wenwei Sun v. Aviles, 53 So.3d 1075, 1077-78 (Fla. 5th DCA 2010) (affirming trial court’s dismissal of plaintiff's action based on fraud on the court when plaintiff and his wife and daughter "lied on virtually every discovery occasion ... making it virtually impossible for the appellees to defend against the damage claims advanced by the appellants”); Sky Dev., Inc. v. Vistaview Dev., Inc., 41 So.3d 918, 919-20 (Fla. 3d DCA 2010) (affirming trial court’s dismissal of plaintiff's action based on fraud on the court where corporate office tampered with witness during a deposition and the trial); Ramey v. Haverty Furniture Cos., 993 So.2d 1014, 1020 (Fla. 2d DCA 2008) (affirming trial court's dismissal of plaintiff’s action based on fraud on the court where plaintiff "provided intentionally false deposition testimony and interrogatory answers”); Hutchinson v. Plantation Bay Apts., LLC, 931 So.2d 957, 960 (Fla. 1st DCA 2006) (affirming trial court’s dismissal of plaintiff’s action based on fraud on the court where plaintiffs attempted to conceal the dog attack that caused injuries attributable to the fall at issue and attempted to conceal past symptoms); Piunno v. R.F. Concrete Constr., Inc., 904 So.2d 658, 658 (Fla. 4th DCA 2005) (affirming trial court's dismissal of plaintiff's action based on fraud on the court where plaintiff made a number of misrepresentations "regarding his prior injuries and litigation history, and filed a false affidavit intended to obfuscate the truth and hamper the defendant’s ability to defend”).

. Florida’s appellate courts reached a similar conclusion. See Coney v. State, 995 So.2d 1038, 1044 (Fla. 4th DCA 2008) ("Coney filed a notice of voluntary dismissal, but the filing of a voluntary dismissal does not divest a court of jurisdiction to enter an order authorizing sanctions.”); Van Meter v. State, 726 So.2d 388, 389 (Fla. 1st DCA 1999) ("A trial court retains jurisdiction to make a determination pursuant to section 57.105, Florida Statutes, concerning the reasonableness of litigation even after the filing of a notice of voluntary dismissal.”). Both Coney and Van Meter dealt with prisoners who had repeatedly filed frivolous pleadings. In those cases, the trial and appellate courts held they possessed authority to impose sanctions after the prisoners had voluntarily dismissed their cases.