# Third District Court of Appeal

## State of Florida

Opinion filed November 9, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D13-2607 & 3D13-2379
Lower Tribunal No. 10-39316
_____


**The Bank of New York Mellon, etc.,**
Appellant/Cross-Appellee,

vs.

**Poker Run Acquisitions, Inc.,**
Appellee/Cross-Appellant.


Appeals from the Circuit Court for Miami-Dade County, Jennifer D. Bailey, Judge.

Liebler Gonzalez & Portuondo and J. Randolph Liebler, Tricia J. Duthiers, and Adam M. Topel, for appellant/cross-appellee.

Cohen │ Ruiz P.A. and Mario M. Ruiz, for appellee/cross-appellant.


Before SHEPHERD, LAGOA, and EMAS, JJ.

LAGOA, J.

Appellant/Cross-Appellee, the Bank of New York Mellon, etc. ("the Bank"), appeals from an Amended Final Judgment Determining Amounts Due and Owing ("Amended Final Judgment") and an Order on Plaintiff's Motion for Rehearing and to Alter or Amend Judgment. The Bank argues that the trial court did not possess jurisdiction to enter the Amended Final Judgment after it filed a Notice of Voluntary Dismissal. Appellee/Cross-Appellant, Poker Run Acquisitions, Inc. ("Poker Run"), appeals from the Amended Final Judgment and an order denying its motion for prevailing party attorneys' fees and costs. Poker Run asserts that the trial court erred in awarding the Bank additional interest in the Amended Final Judgment, and that the trial court erred in denying its motion for prevailing party attorneys' fees and costs.

Based on Pino v. Bank of New York, 121 So. 3d 23 (Fla. 2013), we are compelled to reverse and vacate the Amended Final Judgment as the Bank's Notice of Voluntary Dismissal divested the trial court of jurisdiction. Because the trial court lacked jurisdiction to enter the Amended Final Judgment, we also vacate the trial court's order denying Poker Run's motion for prevailing party attorneys' fees and costs.

## I.     FACTUAL & PROCEDURAL HISTORY

In June 2008, Poker Run sued the Bank's borrower, Alvaro Gorrin (the "Borrower"), for breach of an unlimited personal guaranty (the "Guaranty Case").

2

The trial court entered final summary judgment in favor of Poker Run and the Borrower appealed. While the appeal was pending, Poker Run executed on various assets of the Borrower, including the real property (the "Property") at issue in this matter. Poker Run took title to the Property pursuant to a sheriff's deed recorded on May 6, 2010.

On July 20, 2010, the Bank filed a Complaint against the Borrower seeking to foreclose on its $2,360,000.00 mortgage lien recorded against the Property (the "Foreclosure Case"). Poker Run moved to intervene. On October 8, 2010, the trial court granted Poker Run's motion and ordered the Bank to provide Poker Run payoff figures limited to the amount due when the sheriff's deed was filed. On October 20, 2010, the Bank filed an Amended Complaint naming Poker Run as the sole defendant and owner of the Property. Pursuant to an order entered April 6, 2011, Poker Run ultimately tendered payment to the Bank in the amount of $2,581,227.15, which the Bank rejected.

On November 23, 2011, while the Foreclosure Case was pending, this Court reversed the final summary judgment in the Guaranty Case and remanded for a new trial.[1] See Gorrin v. Poker Run Acquisitions, Inc., 77 So. 3d 739 (Fla. 3d DCA 2011).

_____

[1] On remand, the trial court ruled that the Property would remain in Poker Run's possession due to the Borrower's attempt to fraudulently transfer the Property during Poker Run's execution. On June 24, 2013, the trial court entered final judgment in favor of Poker Run. This Court affirmed the final judgment in Gorrin

3

On February 10, 2012, the Bank filed a Second Amended Complaint in the Foreclosure Case re-naming the Borrower as a defendant.[2] Poker Run denied the Bank's claimed damages and asserted various affirmative defenses. The trial court then transferred the Foreclosure Case to the same division as the Guaranty Case.

On February 11, 2013, the trial court held a pretrial hearing in the Guaranty Case, which the Bank attended. At that hearing, Poker Run raised concerns regarding the sale of the Property,[3] including the pendency of the Foreclosure Case.[4] Two days later, the trial court entered a Closing Order in the Guaranty Case requiring Poker Run to pay the Bank the full amount of its claimed payoff upon the sale of the Property. The Closing Order also "reserve[d] jurisdiction to adjudicate

v. Poker Run Acquisitions, Inc., 163 So. 3d 1207 (Fla. 3d DCA 2015) (table).

[2] The Bank re-named Gorrin as a defendant in the Foreclosure Case as a result of this Court's reversal of the final judgment in the Guaranty Case.

[3] In August of 2012, the trial court had entered an order appointing a receiver in the Guaranty Case. That order required Poker Run to immediately turn over possession of the Property to the Receiver and allowed the Receiver to list the Property for sale.

[4] In its Objections to the Closing Documents regarding the sale of the Property, Poker Run objected to the closing statement requiring a payoff in full of the Property's mortgage. Specifically, Poker Run asserted that "[t]he appropriate amount of the mortgage payoff is precisely the issue being litigated before this Court in . . . (the "Foreclosure Action"), where Poker Run has argued (and Judge Cohen Lando previously ruled) that the amount due to the Bank is hundreds of thousands of dollars less than what is claimed. However, the closing statement, received yesterday, requires payment in full of the entire amount claimed by the Bank, which effectively adjudicates the Foreclosure Action without a trial."

4

Poker Run's or [the Borrower's] claim . . . that the amount due is less."[5]  The Property was then sold and the Bank accepted $3,033,089.65 from the sale as its payoff.  The Bank subsequently filed a motion to vacate the Closing Order, contending that it was not present when the Closing Order was entered.  The trial court found that the Bank, as a non-party in the Guaranty Case, lacked standing to file the motion to vacate.

On March 26, 2013, the Bank filed a Notice of Voluntary Dismissal (the "Notice") in the Foreclosure Case.  Poker Run filed a Motion to Strike the Notice, arguing that the Bank could not accept the payoff from the Property's sale in the Guaranty Case and then deprive the trial court of jurisdiction to adjudicate Poker Run's claims.  On April 15, 2013, the trial court held a bench trial in the Foreclosure Case.  The Bank contended that the trial court's reservation of jurisdiction in the Guaranty Case Closing Order did not survive the Notice filed in the Foreclosure Case.  Poker Run argued that the Bank was not entitled to keep the

[5] The Closing Order also contains the following language:

> 1. Bank of N.Y. Mellon shall be paid the amount it claims is due at closing, but the court reserves jurisdiction to adjudicate Poker Run's or [the Borrower's] claim . . . that the amount due is less, and if appropriate to order said Bank to return any overpayment, or disputed amount.
> 2. Bank of NY Mellon, shall upon receipt of payment of the amount it claims due, shall issue a voluntary dismissal with prejudice of its foreclosure action, with the court to reserve jurisdiction as noted above in part 1, shall discharge its lis pendens and provide a Satisfaction of Mortgage.

full payoff amount it received from the sale of the Property. In its May 15, 2013 Final Judgment, the trial court found that it maintained jurisdiction in the Foreclosure Case pursuant to its reservation of such in the Guaranty Case's Closing Order. The trial court ruled that the Bank was required to remit to Poker Run $435,934.30 of the payoff amount.

On May 24, 2013, the Bank filed a motion for rehearing, arguing that the Final Judgment contained mathematical errors pertaining to the payoff amount the Bank was required to remit to Poker Run. The trial court granted the motion for rehearing and entered an Amended Final Judgment on August 15, 2013, which corrected the calculation errors, but did not otherwise modify the Final Judgment.[6] The Bank appealed. Poker Run filed a motion for attorneys' fees and costs, contending that it was the prevailing party under section 57.105(7), Florida Statutes (2013). The trial court denied Poker Run's motion, and Poker Run appealed.

II. ANALYSIS

A. *The Bank's Appeal*

The Bank argues that the trial court erred in proceeding with trial in the Foreclosure Case and ultimately entering the Amended Final Judgment because it was divested of jurisdiction when the Bank filed its Notice. Based on Pino v. Bank

---

[6] The Amended Final Judgment corrected the payoff amount owed by the Bank to Poker Run from $435,934.30 to $325,934.20.

6

of New York, 121 So. 3d 23 (Fla. 2013), we agree. In Pino, the Florida Supreme Court noted that "[t]he voluntary dismissal serves to terminate the litigation, to instantaneously divest the court of its jurisdiction to enter or entertain further orders that would otherwise dispose of the case on the merits, and to preclude revival of the original action." Id. at 32.

There are some limited exceptions to the rule articulated in Pino. For example, a distinction exists between a party filing a simple voluntary dismissal with prejudice and an order by the trial court dismissing an action but reserving jurisdiction or incorporating the parties' settlement agreement. As this Court has previously explained:

> There is a difference between presenting a settlement agreement to the trial court for approval prior to dismissal of an action and cases where the parties voluntarily dismiss the action without an order of the court pursuant to Florida Rule of Civil Procedure 1.420. A voluntary dismissal under rule 1.420(a) divests the trial court of continuing jurisdiction over the case. However, where the parties, prior to dismissal, present a settlement agreement to the trial court for approval and the trial court enters an order of dismissal predicated on the parties' settlement agreement, the trial court retains jurisdiction to enforce the terms of the settlement agreement.

Albert v. Albert, 36 So. 3d 143, 147 (Fla. 3d DCA 2010) (citations omitted).

Contrary to Poker Run's assertion, however, the Closing Order in the separate Guaranty Case does not fall within an exception to Pino for purposes of

7

the Foreclosure Case. The Closing Order in the Guaranty Case was not a settlement agreement entered in the Foreclosure Case. Indeed, the Closing Order was not entered in the Foreclosure Case, and it did not otherwise purport to reserve the trial court's jurisdiction to take any further action in the Foreclosure Case. In fact, the trial court subsequently concluded that the Bank could not challenge the Closing Order because the Bank had not been made a party to the Guaranty Case. The trial court, therefore, could not rely on its inherent powers to enforce, in the Foreclosure Case, the Closing Order entered in the Guaranty Case, since once the Bank's Notice was filed, the trial court was immediately divested of jurisdiction in the Foreclosure Case and no exception to Pino applied.

We note that it is clear from the record that the trial court intended to enter the Closing Order in both the Guaranty and Foreclosure Cases. As the trial court stated at the hearing on Poker Run's Motion to Strike the Bank's Notice:

> The bottom line is [the Property] closed with the Court reserving jurisdiction to address the outstanding claims that Poker Run are [sic] asserting are due and owing.
>
> . . . .
>
> The bottom line is they can't handle both claims. You can't have it where I order that the case—that the property be closed subject to certain circumstances, take advantage of that closing, and now say well, because you closed we're not making a claim anymore. That's not fair.
>
> . . . .

8

> But there was a lot going on and we did it on Monday and we brought you back on Wednesday. Everybody was trying to get it closed because it was in everybody's economic interest to get it closed.
>
> . . . .
>
> So it seems to me that in 10-39316 [the Foreclosure Case], notwithstanding that fact that the order [Closing Order] was entered in the '08 case [Guaranty Case], it should have been—if I'd been on top of things—this should have been an order entered in 10-39316 [the Foreclosure Case] in an abundance of caution
>
> . . . .
>
> Pursuant to the Court's order, I reserve jurisdiction to adjudicate the affirmative defenses, the amount due and owing that I ordered. I think it's clear from the order that I ordered that the Bank be paid the most amount it could be paid, so that it would feel comfortable releasing the lien. The reservation by the Court survives the voluntary dismissal, I believe, because of the specific circumstances that motivate the voluntary dismissal.

We are sympathetic to the trial court—this was clearly an oversight and not an intention to insulate the Foreclosure Case from the effect of the Closing Order. Nonetheless, because the Guaranty and Foreclosure Cases maintained their separate existences, cf. Santiago v. Mauna Loa Invs., LLC, 189 So. 3d 752 (Fla. 2016), the Closing Order in the Guaranty Case cannot be imported into the Foreclosure Case such that an exception to Pino would apply in the Foreclosure Case.

9

While we are therefore compelled to reverse, we note that Poker Run is not without a remedy. The sole reason the Bank received $3,033,089.65 from the sale of the Property was that the Closing Order directed the payment to be made,[7] and it is

undisputed that the trial court anticipated a subsequent adjudication of the Bank's and Poker Run's dispute over how much the Bank was ultimately entitled to receive. Nothing in the record before us precludes Poker Run from filing a separate suit against the Bank seeking repayment for the sums Poker Run alleges the Bank is not entitled to keep.[8] Presumably, that action would be transferred to

---

[7] To note, counsel for the Bank at the hearing on Poker Run's Motion to Strike the Notice did ultimately acknowledge that the reason for filing its Notice was because it had received the $3,033,089.65 payoff pursuant to the Closing Order:

> [THE BANK]: We voluntarily dismissed the action.
> THE COURT: Because you were paid.
> [THE BANK]: Correct.
> THE COURT: Not because you lost interest.
> [THE BANK]: That happens too sometimes. But no, not in this case.
> THE COURT: So the question is that the bank was paid. And how much the bank was paid, I think it's part of the reserved jurisdiction of the Court. And that part survives the voluntary dismissal, and the case should not be closed on the adjudication on the amount outstanding pursuant to the Court's reservation.

[8] We express no opinion regarding the merits of such a suit.

the same division of the trial court that handled both the Foreclosure and Guaranty Cases in an effort to conserve judicial resources.

   B.   *Poker Run's Cross-Appeal and Consolidated Appeal*

In its cross-appeal, Poker Run argues that it was error for the trial court in the Amended Final Judgment to award the Bank $2,707,155.45, which included $141,516.67 in interest and $56,000.00 in insurance charges incurred during the period from December 1, 2009 to June 30, 2011. Poker Run argues this was error, and that the Bank was only entitled to the amount Poker Run tendered, $2,581,227.15. Because as we noted in Section A *supra*, the Notice divested the trial court of jurisdiction, the trial court's Amended Final Judgment must be vacated.

The same rationale dictates our resolution of the issue raised in Poker Run's consolidated appeal. Poker Run's motion for attorneys' fees and costs asserted that Poker Run was the prevailing party at trial. Because the Notice divested the trial court of jurisdiction, the trial court's order denying Poker Run's motion for attorneys' fees and costs must be vacated.

III.  CONCLUSION

Because the Foreclosure Case terminated when the Bank filed its notice of voluntary dismissal, the trial court was without jurisdiction to take any further action in that matter. We therefore reverse and vacate the Amended Final

Judgment.  We further vacate the trial court's order denying Poker Run's motion for attorneys' fees and costs as that order was entered after the filing of the Bank's notice of voluntary dismissal.

Reversed and Remanded.